PARKER *et al.*, *Appellants*, v. VANHOOZER *et al.*

### Division Two, February 16, 1898.

1. **Equity**: REFORMATION OF DEED: EVIDENCE.  Courts of equity will correct written instruments which have been erroneously framed, but the evidence that there has been a mistake must be clear and convincing.  In such cases the burden of proof is on the party asserting the mistake, and the mistake must have been mutual, and the original agreement, as well as the mistake, must be made out by satisfactory and clear evidence.

2. ———: ———: ———: APPELLATE PRACTICE.  The appellate court will indulge a presumption in favor of the correctness of the finding of the trial judge in an equity case, but will re-examine the whole record and arrive at its own conclusions upon the facts in evidence.

3. ———: ———: ———: CASE STATED.  Defendant and his step-mother agreed upon a division of his father's land and he executed to her a deed for the land in suit, which conveyed the entire estate, while he contends that a life estate alone was intended.  Numerous witnesses testified after her death that she had frequently stated that defendant would get her land after her death and that she only had a life estate; that there was the warmest affection between them; but the evidence also showed that the scrivener who drew the deed positively said that she did not direct him how to draw the deed as to the duration of her estate; that the deed now is just as he intended it; defendant testified that he told the notary who took the acknowledgment that he understood the deed's contents when he executed it.  Defendant is seeking to change his own deed; no witness testified that he directed a different deed to be drawn.  She lived three years after it was made, and no effort was made to reform it while she lived, and no claim was made to her that a mistake had been made, and none was made to anyone until the deed had been of record seven years, and after her death he tried to rent the land from her administrator.  *Held*, that the action of the court in setting the deed aside was error.

*Appeal from Buchanan Circuit Court.*—HON. A. M. WOODSON, Judge.

REVERSED.

*Casteel & Haynes* for appellants.

(1) Before respondent is entitled to the relief prayed for, he must show that there was a mistake, and that it was a mutual one, between the parties, by testimony so clear and convincing that there is no doubt left in the mind of the chancellor. There must be a certainty of the mistake; a preponderance of testimony in its favor is not sufficient. *Tesson v. Ins. Co.*, 40 Mo. 33; *State ex rel. v. Frank*, 51 Mo. 98; *Sweet v. Owens*, 109 Mo. 1; *Bartlett v. Brown*, 121 Mo. 353; *Clark v. St. Louis Transfer Co.*, 127 Mo. 255; *Shay v. Pettes*, 35 Ill. 360; *Mills v. Lockwood*, 42 Ill. 111; *Goltra v. Sanasack*, 53 Ill. 481; *Edmond's Appeal*, 59 Pa. St. 220; *Newton v. Holley*, 6 Wis. 564; *McClelland v. Sanford*, 26 Wis. 595; *First Presbyterian Church v. Logan*, 77 Iowa, 328; *Bodwell v. Heaton*, 40 Kan. 36; *Potter v. Potter*, 27 Ohio St. 84; *Heavenridge v. Monday*, 49 Ind. 434; *Moore v. Giesecke*, 76 Tex. 543; *Jarrell v. Jarrell*, 27 West Va. 743; *Lestrade v. Barth*, 19 Cal. 660: *Hathaway v. Brady*, 23 Cal. 122; *Marsh v. Marsh*, 74 Ala. 418; *Stockbridge, Etc. Co. v. Hudson Iron Co.*, 102 Mass. 45; *Andrews v. Andrews*, 81 Me. 337; *Lyman v. Little*, 15 Vt. 576; *Preston v. Whitcomb*, 17 Vt. 183; *Andrew v. Spurr*, 8 Allen, 412; *Conover v. Wordell*, 22 N. J. Eq. 492; *Burgin v. Gibberson*, 26 N. J. Eq. 72; *Maxwell Land Grant Case*, 121 U. S. 325; 1 Story's Eq. Jur., secs. 157-161; Pomeroy's Eq. Jur. [2 Ed.], sec. 859, and second note; 15 Am. and Eng. Ency. Law, p. 661, and note 5. (2) If there was a mistake in this case respondent is not entitled to the relief prayed for. He gave no direction to the scrivener as to the kind of deed he wished, and he signed the deed without reading it, or hearing it read. To grant the relief would be to encourage culpable negligence. *Gleen v. Statler*, 42 Iowa, 107; *Roundy v. Hart*, 75 Iowa, 662;

*Butman v. Hussey,* 30 Me. 263; *Hill v. Busch,* 19 Ark. 512; *Met. Loan Ass'n v. Esche,* 75 Col. 573; Strong's Eq. Jur., secs. 146–148. (3) Conceding that the testimony warrants a reformation of the deed at bar, respondent has slept too long on his rights, and has been guilty of such conduct as to estop him from the relief prayed for. A person is not allowed to stand by and see another act upon his quiescence, never giving a note of warning, and then profit thereby.

*J. W. Boyd* for respondents.

GANTT, P. J.—Action of ejectment for eighty-nine and one half acres of land in Buchanan county. Ouster laid on March 1, 1893. The answer is a general denial, and an equitable defense with a prayer for reformation of a deed from James C. Vanhoozer to Harriet Vanhoozer. The circuit court reformed the deed and gave judgment for defendants. Plaintiffs appeal.

James C. Vanhoozer, the principal defendant, admitting having executed the deed under which plaintiffs claim title, averred and charged in his answer: "That by mutual mistake, error and oversight on the part of said Harriet Vanhoozer, and James C. Vanhoozer, and the person who wrote and prepared said deed, the words, 'for and during her natural lifetime,' were left out of said deed when said words by said mutual mistake, agreement and understanding, should have been inserted in said deed after the following words, to wit: 'Forever quitclaim unto the said party of the second part,' and also after the words in said deed, to wit: 'Unto the said party of the second part, and her heirs and assigns,' and in every other place in said deed where said words would be inserted to cause said deed to convey to said Harriet Vanhoozer the interest of the

defendant therein, only for and during her natural life-
time, and the word 'forever' used in the *habendum*
clause of said deed was inserted therein by mutual mis-
take of the parties thereto, and by and in accordance
with the mutual understanding and agreement of the
parties thereto, should have been left out of said deed."
Defendant James C. Vanhoozer, after further admit-
ting that plaintiffs were the sole heirs of Harriet
Vanhoozer, asks for a reformation of the deed under
which plaintiffs claim title, and that the legal title to
said lands be vested in defendant, James C. Vanhoozer.
Isaac Vanhoozer, the father of James C. Vanhoozer
and the husband of Harriet Vanhoozer, was admitted
to be the common source of title. He died intestate
May 12, 1885, leaving James C. Vanhoozer, his only
child and heir at law and the said Harriet as his widow.
Mrs. Harriet Vanhoozer died May 3, 1889, without
issue by Isaac Vanhoozer, and leaving plaintiffs as her
sole heirs at law. The rents and profits were admitted
to be of the value of $18 per month. The evidence on
behalf of defendants established that Isaac Vanhoozer
in his lifetime owned about two hundred and fifty acres
of land. By a verbal arrangement he gave his son
James C. Vanhoozer about ninety acres, but never gave
him a deed therefor. After Isaac Vanhoozer's death Mrs.
Vanhoozer, the widow, and James C. agreed upon
Judge Bunton, Mr. Fenton and Mr. Wells to divide
the remainder of the lands. The widow desired ten
acres of farming land and they set off to her the ten
acres and a tract of seventy-nine and one half acres
less a right of way of about three acres. This last tract
was very poor and rough. The remainder they set off
to the son. No specific directions were given as to
how the division was to be made either by Mrs.
Vanhoozer or James C. No former assignment of
dower or partition was made. Nothing was said that

day about deeding the land. Mrs. Vanhoozer remarked that she had raised James C. since he was a little child and she wanted him to have everything, or rather expected him to have everything, when she died. Afterward, on May 22, 1885, Mrs. Harriet Vanhoozer executed a quitclaim deed to James C. Vanhoozer for all the remainder of the lands of which his father died seized, and he and his wife on the same day conveyed the land in suit to Harriet Vanhoozer and her heirs forever by a quitclaim deed.

*W. S. Wells*, who prepared the deeds, testified: "They said to me that they wanted me to draw up the deed, that they wanted to know, each one wanted to know, what they were entitled to, and that they wanted me to draw up the deeds between the two parties, and Mrs. Vanhoozer said that she wanted to know what she got during her lifetime, and that she wanted something to show that she was entitled to it, and that all she wanted was the property during her lifetime." In response to this question by the court, "When she directed you to draw the deed, what did she say to you in reference to the length, duration of the estate, if anything?" Mr. Wells answered, "Well, she just said to me that she wanted me to make a deed from him to her and she didn't state just what she wanted in the deed, but before that she had stated that she wanted a deed to show what she was entitled to her lifetime." *E. C. Wells* testified that at the time he took the old lady's acknowledgment to the deed she made James, he heard her say "that Jim had made her a deed for her lifetime to the eighty acres on which they lived and ten acres besides." Just before her death she stated to *Mr. John Thomas:* "That she intended for Jim and his children to have it, the land; said that was the agreement between her and Jim; at her death, it was to fall to Jim." "That she wanted Jim and his children to

VOL. 142 mo—40

have it." "She said that Jim had made her a deed for the ninety acres for her lifetime." And further stated that Mrs. Vanhoozer did not state what kind of a deed Jim had made her, but that "she wanted Jim and his children to have it." *Mrs. John Thomas* stated that she heard Mrs. Vanhoozer say: "She only had a lifetime deed." "She said she wanted hers while she lived, to herself, and then it would be Jim's." "She said it was a quitclaim deed she claimed to have," "and thought she had it." "That she wanted Jim to have it." "And she said she felt as near to him as if he had been her own child, and she said he was always good to her, and never gave her a cross word." *James Morgan* says "that in the spring of '86 he had a talk with Mrs. Vanhoozer, and among other things she said that she had the home place, that would keep her while she lived, and when she died she said all that she had would go to Jim." "Said at her death everything went to Jim." *A. P. Jones* says that at the time Mr. Bunton and Mr. Fenton went to appraise the land that he heard Mrs. Vanhoozer say "she wanted Jim to let her have the home place to live on her lifetime, and when she died she wanted it all to go to Jim." "He did not state, nor did she state, how they were going to divide the property." *George W. Vanhoozer* testified that he brought the deed to St. Joseph to have it recorded, and when he went back he told Mrs. Vanhoozer that the clerk said the deed was no account, and she said: "It makes no difference whether it is or not; it's good betwixt me and Jim for my lifetime, and that's all I want out of it, is a lifetime living." She says, "Jim and his father made what we have got here and I want him to have it."

This is a fair synopsis of the testimony. It is apparent that the warmest affection existed between Mrs. Vanhoozer and her stepson and yet it is equally

plain that she desired a deed to her share after her husband's death. Whether she and James were both proceeding on the theory that each was entitled to one half of the husband's estate, or simply agreed to make a friendly partition, the evidence does not disclose.

I.   At the common law, when a contract or agreement of parties was committed to writing and was complete on its face, it was conclusively presumed that all prior negotiations were merged in the writing and parol evidence was inadmissible to contradict or vary the terms of the contract or agreement as shown by the writing.  But from time immemorial courts of chancery have exercised the right to correct written instruments which have been erroneously framed, as where it is admitted or proven that an instrument intended by both parties to be prepared in one form has by an undesigned insertion or omission been prepared or executed in another.  But while a court of equity will correct a mistake in a written instrument, the evidence that there has been a mistake should be clear and convincing, because in equity as in law the *prima facie* presumption is indulged that the written contract or instrument exhibits the ultimate intention, and that all previous negotiations and proposals have been abandoned.  The burden, therefore, is upon the party asserting the mistake.  *Sweet v. Owens,* 109 Mo. 1; *Tesson v. Ins. Co.,* 40 Mo. 33.  Moreover, the mistake must be mutual and both the agreement and the mistake must be made out by satisfactory and clear evidence.

The evidence in this case satisfied the learned judge who tried this cause in the circuit court that a mistake had been made as alleged and we are disposed to defer much to his opinion, but while indulging this presumption in favor of the correctness of his judgment, we are not at liberty, even if so disposed, to deny our own

jurisdiction to re-examine the whole record and arrive at our own conclusions upon the facts; otherwise, appeals in chancery cases would be a mockery.

The allegation then is that there was a mutual mistake by Mrs. Harriet Vanhoozer and James C. Vanhoozer and his wife in the deed to Harriet Vanhoozer on the twenty-second day of May, 1885. There are certain features of this case which a court of equity can not ignore. The grantee in that deed, Mrs. Vanhoozer, is dead. The mistake now alleged was never mentioned in her lifetime, and her version of what the agreement was which culminated in this deed can never be known from her own lips. No claim that such a mistake was made by defendant James C. Vanhoozer appears even to have been made until 1893 some seven or eight years after the execution and recording of the deed. James C. Vanhoozer was incompetent to testify as to the agreement entered into between his stepmother and himself which resulted in the making of the deed because at the time of the trial Mrs. Vanhoozer was dead. The most satisfactory evidence *aliunde* the deed itself, then, is barred out and resort must be had to the next best.

Mr. W. S. Wells, who drew the conveyance, and the notary who took the acknowledgment, testified: The scrivener says positively in answer to a question from the court that Mrs. Vanhoozer did not direct him how to draw the deed as to the duration of the estate she was to take, but simply said she wanted a deed to show what she was entitled to in her lifetime. In the nature of things he could not have mistaken her wishes. There is nothing in her statement to show that she directed a conveyance to her for life only, and he distinctly testifies and reiterates the statement that the deed now is just as he intended to write it. That he made no mistake so far as his own intentions were

concerned.    E. C. Wells testifies that at the time he took her acknowledgment to the deed she made to James C. Vanhoozer, the defendant, she said "Jim had made her a deed for her lifetime to the eighty acres on which she lived and ten acres beside." Granting all this, still there is not a word of testimony here that James C. Vanhoozer directed Wells to prepare a conveyance which would grant only a life estate in his mother. And right here it seems to us the evidence is wholly deficient.    We are now asked to correct James C. Vanhoozer's conveyance. Mrs. Vanhoozer and her heirs are not complaining.    He is seeking to change his own deed.    No witness has sworn that James directed a different deed to be drawn from that which he signed and acknowledged. He testifies that he told the notary he understood its contents when he executed it.    What, then, is the rule of equity? It is that the mistake must have occurred in drawing this instrument, not in making the contract out of which it grew. There is abundant evidence that Mrs. Vanhoozer bore the strongest affection for James C., and that she often expressed an intention that he should have her estate at her death, but these expressions of regard fall far short of an admission that there was a mistake in her deed.    Those expressions of affection well consisted with an intention to devise James her share, but it is a serious matter for courts to set aside instruments which have become muniments of title, spread upon the records of conveyances, upon loose, indefinite statements of witnesses.    With the highest respect for the learned circuit judge who reached a different conclusion, we are unable to find sufficient and satisfactory evidence which will justify us in annulling and changing this deed.    For eight years it had remained unchallenged upon the records of Buchanan county.

The plaintiffs had a right to rely upon that conveyance to their ancestor.

There is no evidence of what the agreement was as to the character of deed Mrs. Vanhoozer was to receive; there is no evidence of any directions by James C. or Mrs. Harriet Vanhoozer to prepare a deed conveying only a life estate; there is nothing to indicate that James was misled in any way, but on the contrary he executed the deed with every opportunity to discover its contents. There is evidence that he endeavored to rent the land from his mother's administrator; there is abundant evidence that no claim of mistake was made for seven years after the deed had been put to record.

The evidence that there was a mistake is indefinite and unsatisfactory. In such a case equity, as well as the law and experience, alike dictate that the conveyance should stand as written, acknowledged and recorded. *Ringo v. Richardson*, 53 Mo. 385.

The judgment and decree of the circuit court is reversed with directions to enter judgment for plaintiffs for the possession and rents and profits agreed upon and to set aside the decree changing the deed. SHERWOOD and BURGESS, JJ., concur.