ESTATE OF PAUL F. DONNELLY, DECEASED, MERCANTILE-COMMERCE BANK & TRUST CO., A CORPORATION, AND VIRGINIA G. DONNELLY, CO-ADMINISTRATOR DE BONIS NON, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 87103.    Promulgated November 23, 1938.

**1238**

OPINION.

MURDOCK: This trust was not a revocable trust within the meaning of section 302 (d) of the Revenue Act of 1926, as amended by section 401 of the Revenue Act of 1934. That section, as amended, provides for the inclusion in the gross estate of property transferred in trust by the decedent, "where the enjoyment thereof is subject at the date of his death to any change through the exercise of a power, either by the decedent alone or in conjunction with any person, to alter, amend, or revoke." The decedent reserved no power to alter or amend. He purported to reserve the power to revoke the trust with the consent of his wife. Those two, being the only interested parties, could have revoked the trust at any time in the absence of that reservation. *Stephens* v. *Moore*, 298 Mo. 215; 249 S. W. 601. It has been held that a reservation of that kind is not a power to revoke within the meaning of the words above quoted. *Helvering* v. *Helmholz*, 296 U. S. 93; *White* v. *Poor*, 75 Fed. (2d) 35; affd., 296 U. S. 98.

Section 803 of the Revenue Act of 1932, entitled "Future Interests," provides in part as follows:

(a) Section 302(c) of the Revenue Act of 1926, as amended by the Joint Resolution of March 3, 1931, is amended to read as follows:

"(c) To the extent of any interest therein of which the decedent has at any time made a transfer, by trust or otherwise * * * intended to take effect in possession or enjoyment at or after his death, or of which he has at any time made a transfer, by trust or otherwise, under which he has retained for his life or for any period not ascertainable without reference to his death or for any period which does not in fact end before his death (1) the possession or enjoyment of, or the right to the income from, the property * * *."

The property in question is the $100,000 which the wife was to receive and did receive under the trust instrument upon the death of her husband. Possession of that property from the time of the creation of the trust until the death of the decedent was in the trustees.

The enjoyment of the property likewise took effect immediately when the trust was created. Thus, the transfer which the decedent made took effect in possession or enjoyment immediately, rather than at or after his death, and the decedent did not retain the possession of the property for himself during any period. *May* v. *Heiner*, 281 U. S. 238; *Burnet* v. *Northern Trust Co.*, 283 U. S. 782; *McCormick* v. *Burnet*, 283 U. S. 784; *Morsman* v. *Burnet*, 283 U. S. 783; *Helvering* v. *St. Louis Tr. Co.*, 296 U. S. 39; *Becker* v. *St. Louis Union Trust Co.*, 296 U. S. 48; *Frederick Davis Van Sicklin et al., Executors*, 35 B. T. A. 306. *Klein* v. *United States*, 283 U. S. 231, is not in point because here the decedent divested himself of the entire estate and the remainder could vest in him only upon the happening of a condition precedent.

The remaining question is, Did the decedent retain for his life or for a period which in fact did not end before his death, the enjoyment of the property or the right to the income from the property, within the meaning of section 302(c), as amended? The respondent argues that the rights which the decedent retained in regard to the use of the income, that is, the right to have it used for their family and joint living expenses and for the support and maintenance of the wife, were such that the income of the trust would be taxable to the grantor under a line of cases beginning with *Douglas* v. *Willcuts*, 296 U. S. 1. See also *Helvering* v. *Schweitzer*, 296 U. S. 551; *Helvering* v. *Stokes*, 296 U. S. 551; *Hill* v. *Commissioner*, 88 Fed. (2d) 941; *Commissioner* v. *Grosvenor*, 85 Fed. (2d) 2. Cf. *Helvering* v. *Blumenthal*, 296 U. S. 552. The courts in those cases held that income from trusts set up by a husband and father for the support and maintenance of his wife, or for the payment of family living expenses, is income to him under the general definition of income, since it is used to discharge his obligations, and in that way he has the enjoyment and benefit of it. This is an estate tax case, not an income tax case, and it must be decided under the specific provisions of section 302 (c), as amended, rather than upon any analogy from income tax cases. The language of the statute does not clearly indicate that it was intended to apply to a situation like this. This decedent did not retain the enjoyment of the property nor the right to the income from the property, as those phrases are ordinarily understood. He retained no right to receive the income, and any enjoyment of the property or right to the income from the property came to him in a very indirect manner, if at all. The use of the income was not limited to the discharge of his legal obligations. The legislative history of the amendments to section 302 (c) of the Revenue Act of 1926 indicates that Congress was trying to prevent the evasion of estate tax in cases where the decedent retained a life

interest in trust property for himself and conveyed the remainder to others.

The following language appears in the report of the Ways and Means Committee of the 72d Congress, Report No. 708, p. 46:

The purpose of this amendment to section 302(c) of the revenue act of 1926 is to clarify in certain respects the amendments made to that section by the joint resolution of March 3, 1931, which were adopted to render taxable a transfer under which the decedent reserved the income for his life. The joint resolution was designed to avoid the effect of decisions of the Supreme Court holding such a transfer not taxable if irrevocable and not made in contemplation of death. * * *

(2) The insertion of the words "or for any period which does not in fact end before his death," which is to reach, for example, a transfer where decedent, 70 years old, reserves the income for an extended term of years and dies during the term, or where he is to have the income from and after the death of another person until his own death, and such other person predeceases him. This is a clarifying change and does not represent new matter.

(3) The insertion of the words, "the right to the income" in place of the words "the income" is designed to reach a case where decedent had the right to the income, though he did not actually receive it. This is also a clarifying change.

Similar statements are contained in the Finance Committee Report, Report 665, p. 49. The discussion of the Joint Resolution of March 3, 1931, contained in the Congressional Record of that date, volume 74, pp. 7078, 7079, indicates that the purpose of the Joint Resolution was to preclude the possibility of estate tax avoidance through trusts where the grantor reserved the income to himself for life, or the right to the disposition of the income, with remainder to others, which, under decisions of the Supreme Court handed down on the previous day in the cases of *Burnet* v. *Northern Trust Co.*, 283 U. S. 782; *McCormick* v. *Burnet*, 283 U. S. 784; *Morsman* v. *Burnet*, 283 U. S. 783, following *May* v. *Heiner*, 281 U. S. 238, were held not a part of the decedent's gross estate under section 302 (c) of the Revenue Act of 1926.

This was not the kind of a trust that the amendments to section 302 (c) were intended to catch. It is obvious that the present trust was designed neither to evade estate tax nor as a substitute for a testamentary disposition of the decedent's property. The decedent did not reserve the income to himself for life and convey the remainder to others. He knew that he was given to the intemperate use of alcohol and that there would probably be times when he would not have sense enough to take care of his wife or himself. He wanted his wife to have income with which to take care of herself and also himself at such times, and he wanted her at other times to have a small independent income. The fact that the decedent retained the right to receive all income in excess of $417 a month seems unimportant. The property in question is not the entire

corpus of the trust which was placed there to produce income of $417, but is only $100,000 thereof. It is unlikely that a fund of $100,000 would produce more than $417 a month and expenses, and, furthermore, the evidence does not indicate that there ever was any excess from the entire trust fund. The application of section 302 (c), as amended, to this trust is doubtful, to say the least, and doubts under such circumstances must be resolved in favor of the taxpayer. The $100,000 was not properly included in the decedent's estate under section 302 (c), as amended.

Reviewed by the Board.

*Decision will be entered under Rule 50.*

---

OPPER, dissenting: In the majority opinion the underlying questions of fact are treated as though found in favor of respondent. The opinion assumes that the trust instrument carried out the grantor's desire for "his wife to have income with which to take care of herself and also himself at such times [as he was unable to care for himself] and he wanted her at other times to have a small independent income." Although the wife did not in fact use the income for the family living expenses, she did use it "to buy her own clothes" and "for spending money." Whether or not the terms of the trust instrument itself and their requirement that the income be "used and applied upon their family and joint living expenses, and provide in full for her [the wife's] own bills and expenses and for her own care, maintenance and support" would be reformed in an action brought by the wife is at least doubtful. *Robinson v. Korns*, 250 Mo. 663; 157 S. W. 790; *Parker v. Vanhoozer*, 142 Mo. 621; 44 S. W. 728; *Southern Surety Co. v. United States Cast Iron Pipe & Foundry Co.*, 13 Fed. (2d) 833. In any event payment for the wife's necessary personal expenses and for her clothes were obligations of the husband and when incurred were debts of his which he could be required to pay. See *Johnson v. Briscoe*, 104 Mo. App. 493; 79 S. W. 498. The use of the proceeds of a fund of this size by the wife, under her admitted obligation, for the discharge of her personal expenses and for the purchase of her clothing in a case like this where the income of the husband was approximately $25,000 a year can not, it seems to me, be said to be unreasonable as a matter of law. At least the burden must have been upon the petitioner to show that the decedent's obligation to provide funds for his wife's use in those respects was less than the income provided by the trust. See *Commissioner v. Grosvenor*, 85 Fed. (2d) 2. No such burden has been sustained. For all the foregoing reasons and because the majority opinion proceeds upon that assumption, it seems to me this case must be regarded as presenting the same question as to estate tax that was

passed upon under the income tax provisions in *Douglas* v. *Willcuts*, 296 U. S. 1, and similar cases.

The problem under the language of section 803 (a) of the Revenue Act of 1932 [1] is therefore to determine whose income it was that the trust fund provided. This is the same question as was before the Supreme Court in *Douglas* v. *Willcuts*, *supra*. The Court said there (pp. 9, 10):

* * * We have held that income was received by a taxpayer, when, pursuant to a contract, a debt or other obligation was discharged by another for his benefit. The transaction was regarded as being the same in substance as if the money had been paid to the taxpayer and he had transmitted it to his creditor. * * * The creation of a trust by the taxpayer as the channel for the application of the income to the discharge of his obligation leaves the nature of the transaction unaltered. * * * In the present case, the net income of the trust fund, which was paid to the wife under the decree [providing for the wife's maintenance], stands substantially on the same footing as though he had received the income personally and had been required by the decree to make the payment directly.

* * * we find no warrant for a construction which would preclude the laying of the tax against the one who through the discharge of his obligation *enjoys the benefit of the income as though he had personally received it.*

* * * in contemplation of law the income remains in substance that of the grantor. * * * [Emphasis added.]

It can not, I think, be doubted that if the settlor of a trust were to provide that his trustees should use the income to pay his bills instead of distributing the cash to him he would be held to have "retained * * * the * * * enjoyment of or the right to the income from, the property", within the meaning of section 302. Here the only difference is that the wife was constituted an intervening agency for attaining the same result. This does not require a different conclusion. See *Commissioner* v. *Grosvenor*, *supra*. In fact upon her omission, the trust instrument provided for the direct payment by the trustees of those obligations of the settlor which it was contemplated it would in the first instance be the duty of the wife to discharge. The precise language is:

If at any time the said Virginia George Donnelly shall not use said monthly income of $417.00 to pay her own bills and expenses and to care for her own support, maintenance and care and in and about their joint living expenses, then the trustees may pay out and apply and use said monthly income of

---

[1] SEC. 803. FUTURE INTERESTS.

(a) Section 302 (c) of the Revenue Act of 1926, as amended by the Joint Resolution of March 3, 1931, is amended to read as follows:

"(c) To the extent of any interest therein of which the decedent * * * has at any time made a transfer, by trust or otherwise, under which he has retained for his life or for any period not ascertainable without reference to his death or for any period which does not in fact end before his death (1) the possession or enjoyment of, or the right to the income from, the property, or (2) the right, either alone or in conjunction with any person, to designate the persons who shall possess or enjoy the property or the income therefrom; except in case of a bona fide sale for an adequate and full consideration in money or money's worth. * * *"

$417.00 to pay and discharge and take care of her maintenance, care and support and apply any excess to their joint living expenses * * *.

To hold in the face of that language that the settlor did not retain the enjoyment of and the right to the income from the property seems to me to deprive the provisions of the statute of all meaning and practical effect.

It is said in the majority opinion that the legislative history of the section shows that it was designed "to preclude the possibility of estate tax avoidance through trusts where the grantor reserved the income to himself for life" and that "the instant proceeding does not present the kind of a trust that the amendments to section 302 (c) were intended to catch." But the very situation thus described appears to be present here. True, there is no evidence of any intention on the part of the decedent to avoid estate taxes. But it has been repeatedly stated that the mere desire to escape taxation is not material in determining whether or not a particular transaction is subject to tax. See *Gregory* v. *Helvering*, 293 U. S. 465, and cases there cited. And certainly the effect, if not the intent, will have been accomplished. The $100,000 which the wife received from the trust fund at decedent's death would have been a part of decedent's estate and taxable as such had it not been for the creation of the trust. It seems clear that the kind of trust now before us could be used as a vehicle of avoiding estate taxes. Prevention of this is the very motivation recognized in the majority opinion, for the passage of the amendments to section 302.

The language quoted in the majority opinion from the report of the Ways and Means Committee seems to me to indicate that the provisions of section 302 should apply to such a situation as this, rather than otherwise. For the purpose is said to be "to render taxable a transfer under which the decedent reserved the income for his life." What the decedent did here was tantamount to such a reservation. The income was reserved to him as much as though he himself had received it. *Douglas* v. *Willcuts, supra.* The report says further: "the insertion of the words 'the right to the income' in place of the words 'the income' is designed to reach a case where decedent had the right to the income though he did not actually receive it." This language is peculiarly apt to describe the provisions of the present instrument under which, even though decedent may have failed to insist upon it, he could have compelled the trustees to use the income for his own living expenses and to discharge the obligations placed upon him by law to pay those of his wife. I think the principle of *Douglas* v. *Willcuts, supra,* is applicable to this proceeding and am obliged to note my dissent from the conclusion reached by the majority.

Tyson and Disney agree with this dissent.