ESTATE OF WILLIAM H. LEE, DECEASED, RAYMOND J. LEE AND MANUFACTURERS AND TRADERS TRUST COMPANY, EXECUTORS, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 73934. Filed March 25, 1960.

*Robert R. Barrett, Esq.*, for the petitioners.
*John J. Madden, Esq.*, for the respondent.

OPINION.

VAN FOSSAN, *Judge:* The respondent determined an estate tax deficiency in the amount of $86,435.05.

Petitioners' present assignments of errors are as follows:

4. * * *

(a) The determination that the decedent retained any interest or power of any character, whether by way of discharge of his legal obligations or otherwise, in a certain trust created by the decedent under trust agreement dated November 23, 1945.

(b) The inclusion of the property constituting said trust under said trust agreement in decedent's gross estate under §811(c) of the Internal Revenue Code of 1939.

* * * * * * *

(d) The failure to allow as deductions for estate tax purposes attorneys' fees and other expenses incurred by the petitioners in the proceedings for the determination of the estate taxes of the decedent prior to and including this case.

The amount of legal fees paid or to be paid by the petitioners for legal services rendered or to be rendered and disbursements will be determined under Rule 50, thereby disposing of item (d), *supra.*

The facts are all stipulated by written agreement and are incorporated herein by this reference. So far as necessary to a consideration of the question involved they appear later in this opinion.

The petitioners are the duly qualified executors of the will of William H. Lee, deceased. The Federal estate tax return for the estate of the decedent was filed with the district director of internal revenue for the Buffalo District of New York.

William H. Lee and Elizabeth M. Lee were married in the year 1905, and Raymond J. Lee is an issue of this union, having been born on October 29, 1917.

On November 23, 1945, the decedent, William H. Lee, entered into a trust agreement with the Lockport Exchange Trust Company, a New York banking corporation having its principal office in the city of Lockport, New York, as trustee. On the same date and pursuant to the trust agreement, decedent transferred to the Lockport Exchange Trust Company securities and cash possessing a then fair market value totaling $125,000. Manufacturers and Traders Trust Company, the present trustee, is the successor by merger to the Lockport Exchange Trust Company.

Exclusive of the principal of the trust in issue here, the decedent owned, at the date of his death, property includible in his gross estate for Federal estate tax purposes at then prevalent market values of $1,359,214.72, and had an adjusted gross estate of $1,292,078.09.

Elizabeth M. Lee, decedent's wife, survived the decedent less than a month, dying on May 24, 1954. Decedent's son, Raymond J. Lee, is one of the executors of decedent's estate.

Beyond the clauses usually found in trust indentures measuring the trustee's powers and duties in dealing with the corpus and income, and the usual exculpatory clauses, the trust indenture provides, as may be applicable to this case, that (a) the law of the State of New York should govern the indenture; (b) the settlor, decedent, could from time to time add to the corpus of the trust by the mere granting or conveying of property; (c) the trust was irrevocable and was to terminate only at the death of the latter of the two lives in being—Elizabeth and Raymond; and (d) the right of the beneficiaries to receive the trust income was inalienable by assignment or other transfer.

Decedent retained within the instrument itself no powers to alter or change any of the provisions thereof and retained no power to control the activities of the trustee. No provisions were made for the invasion of the principal by the trustee.

The dispositive sections of the indenture are in part as follows:

II. The Trustee shall collect the rents, issues, income and profits from the said Trust Fund and after deducting its proper commissions and charges shall pay over and distribute the net income therefrom in monthly, quarterly or other

suitable installments to or for the benefit of ELIZABETH M. LEE, wife of the Grantor, *for her maintenance and support* so long as she shall live, and after her death, then to or for the benefit of RAYMOND J. LEE, son of the Grantor, *for his maintenance and support*, so long as he shall live. [Italic supplied.]

III. Upon the death of both the said ELIZABETH M. LEE, wife of the Grantor, and the said RAYMOND J. LEE, son of the Grantor, the Trust hereby created shall terminate, and the Trustee shall pay over and distribute the corpus of the said Trust Estate, per stirpes and not per capita, among the lineal descendants of the said RAYMOND J. LEE, son of the Grantor, who shall survive at the time of the termination of said Trust.

After the death of the primary and secondary life beneficiaries, the trust was to terminate and the corpus was to be distributed to certain named remaindermen.

At the date of decedent's death, the principal of the trust had a fair market value of $157,697.56.

The decedent's wife, during the 9 years of 1945 to and including 1953, had net cash income [1] for each year ranging from $5,953.32 to $14,859.54. Her total assets in the 10-year period of 1944 to and including 1953 decreased from $301,113.40 for the year 1944 to $116,-373.99 for the year 1953. At all times from the creation of the trust on November 23, 1945, to the date of her death, May 24, 1954, decedent's wife received all the net income of the trust, excluding gains on the sale of capital assets.

The sole issue now presented is whether the value of the trust created by decedent in 1945 is includible in decedent's gross estate.

It is respondent's position that the decedent by the terms of the trust retained the enjoyment of the transferred property or the income therefrom during his lifetime, thereby rendering the value of the trust includible in decedent's gross estate under section 811(c) of the Internal Revenue Code of 1939 and section 81.18 of Regulations 105. In support of this position respondent argues that the decedent had a legal obligation existing at the time of his death to support his wife, and that when the decedent transferred the property in trust he retained the right to have the income therefrom applied toward the satisfaction of this obligation. Respondent's argument is founded upon the use of the phrase "for her maintenance and support," set forth in the dispositive portion of the trust indenture, above quoted.

From the date of the creation of the trust to the date of his death, decedent had a net worth in excess of $500,000. His wife, besides her income from the trust, had substantial properties and cash of her own during this same period.

No facts other than those which appear in the trust instrument were introduced at the hearing or included in the stipulation concerning the decedent's motives or his intentions in the creation of

---

[1] Excluding Federal income tax payments and proceeds of sale of capital assets.

the trust. The parties have come to issue on whether or not the trust in question manifested in its language the purpose of having the income applied toward decedent's support obligations.

It has long been established that a husband can make a gift to his wife and not every such gift discharges a legal obligation of the husband to support his wife. *Shanley* v. *Bowers*, 81 F. 2d 13, 15 (C.A. 2). On the other hand, it is equally clear that a husband does have a legal obligation to support and maintain his wife in keeping with the standards which his and her economic and social position dictates. See, e.g., *DeBrauwere* v. *DeBrauwere*, 203 N.Y. 460, 96 N.E. 722; *Manufacturers Trust Co.* v. *Gray*, 278 N.Y. 380, 16 N.E. 2d 373. Therefore, where a decedent transfers property in trust and at the same time in the trust instrument provides the right to have the income applied in fulfillment of his legal obligations existing at the date of his death, decedent has retained the "possession or enjoyment" of the property and its value is includible in his gross estate.

The crucial question whether a decedent has retained "possession or enjoyment" often hinges on a factual determination of whether or not the income from the transferred property was intended to fulfill, and was limited to the satisfaction of, a support obligation. Respondent's position is that the trust in issue here is so intended and is so limited. The regulation relied upon by respondent states that the possession or enjoyment of property will be considered as having been retained by the decedent "to the extent that during any such period *it is to be applied* towards the discharge of a legal obligation of the decedent, or otherwise for his pecuniary benefit." (Italic supplied.) Sec. 81.18, Regs. 105.

In dealing with this type of fact situation in the past, this regulation, and particularly the italicized language, has been interpreted to mean that the use of the income from the trust property must be restricted or confined to fulfilling the settlor's obligation to support his beneficiaries. The settlor must possess a right to require that the income be utilized for support purposes as opposed to a permissive or discretionary power in the trustee so to apply it. The ultimate question to be decided is whether the decedent reserved to himself an enforcible right to have the income applied toward his spouse's support. *Commissioner* v. *Dwight's Estate*, 205 F. 2d 298 (C.A. 2), reversing 17 T.C. 1317; *Helvering* v. *Mercantile-Commerce Bank & Trust Co.*, 111 F. 2d 224 (C.A. 8), reversing *Estate of Paul F. Donnelly*, 38 B.T.A. 1234, certiorari denied 310 U.S. 654. Whether we speak in terms of an "enforcible" right or a "restricted" purpose, the meaning is the same, viz, the income must be applied to the satisfaction of the decedent's legal obligations and to no other purpose.

Where the above is not readily apparent, resort must be had to the proper interpretation of the instrument of transfer as the best index of decedent's intent.

This precise question was presented in the case of *Commissioner* v. *Dwight's Estate, supra.* In that case Arthur Dwight settled two trusts. The first, created on December 21, 1931, had initially a corpus of $170,000, later increased by $25,000. The agreement required that the net income be paid "to and among the Beneficiaries for their support and maintenance." The beneficiaries were Dwight's wife and children. The second trust, created on August 15, 1935, was for the exclusive benefit of decedent's wife and provided that the net income was to be paid to her in monthly installments for her support and maintenance. We held that the decedent in that case retained by the mere presence of the phrase no enforcible right to have the income of either trust used to fulfill his legal obligation.[2] We considered the phrase as merely indicating the motive of the decedent and not as adding to or reducing the rights of the parties. In doing so we undertook to distinguish *Helvering* v. *Mercantile-Commerce Bank & Trust Co., supra,* on the grounds that in that case the settlor reserved within the trust instrument itself an "enforcible right" to have the income applied toward his wife's support.

Our opinion in the *Dwight* case was reversed by the Second Circuit Court of Appeals. In doing so the court, Judge Augustus N. Hand speaking, pointed out that having furnished his wife with this trust income, the husband had in part at least discharged his legal obligation of supporting her. 205 F. 2d 298, 300. The court's conclusion arose from the fact that, as the Court of Appeals saw it, the decedent had reserved the right by the use of the phrase "support and maintenance." Thus, the court held that the existence of the income from the trust would have served as a *pro tanto* defense in any suit for support brought by his wife. 205 F. 2d 298, 300. The court also pointed out that the *Mercantile-Commerce Bank* decision, *supra,* was not distinguishable on the grounds set forth by us in our opinion.

With this background, we may proceed with a discussion of petitioners' position that the decedent retained no enforcible right to have the income applied to his obligation. Petitioners cite such cases as *Estate of Clayton William Sherman,* 9 T.C. 594; *Wishard* v. *United States,* 143 F. 2d 704 (C.A. 7); *Estate of Payson Stone Douglass,* 2 T.C. 487, affd. 143 F. 2d 961 (C.A. 3); and *Colonial-American National Bank* v. *United States,* 243 F. 2d 312 (C.A. 4), in support.

---

[2] As to the second trust, we admitted evidence which indicated the decedent's intention was not to support his wife but to provide her with income with which to support her two adult invalid daughters and to maintain a Florida home. On appeal to the Second Circuit this evidence was excluded and the corpus of this trust was included in decedent's gross estate.

The *Sherman* and *Wishard* cases can be dealt with readily. Neither of those cases contained a specific directive to the trustee for the use of the income. In fact, there was no expression of the intent of the settlor to limit the beneficiaries in their use of the income. Under those circumstances, it was held that the trust corpus should not be included in decedent's estate.

In the *Douglass* case, the trustee was given a discretionary power to allocate the income to the minor's support. The decedent in that case was not the trustee. Thus, an independent trustee had absolute discretion in the utilization of the trust income. The distinction is patent.

Petitioners also rely heavily on the recent Fourth Circuit Court of Appeals' opinion in *Colonial-American National Bank* v. *United States, supra.* However, that case, too, is distinguishable. Although the settlor in that case also expressed the wish in the indenture that the income be used for the purpose of supporting his afflicted wife, the court pointed out in its opinion that this clause was not in the dispositive section of the agreement and hence at best could be taken as an indication of the decedent's motives.

In the case before us, the restriction is placed in the same sentence as the gift. There are neither intervening clauses nor language which might cast doubt on the meaning of the phrase. We cannot, under the circumstances of this case, properly disregard the plain language of the trust agreement. The phrase in question is not ambiguous and the indenture as a whole contains no terms or intimations which might force a different interpretation from the one adopted by respondent. The fact that the phrase in question also restricted the gift to decedent's son does not cause a different view, even though decedent owed no duty of support to his adult son. The language of the instrument used with reference to decedent's son presents a different problem and need not be considered here. We decide in this case only the meaning of the phrase in reference to the primary life estate, the one which took effect at the creation of the trust.

Petitioners argue that the presence of the phrase in the language used for the gift to decedent's spouse and the gift to the son indicates that the phrase was merely surplusage and habitual draftsman's language. We do not so view it. There is, of course, no requirement that a trust intended for support purposes be confined to those to whom a legal duty of support is owed. We think it is no distortion of the plain language of this trust to say that decedent desired that the income be used in the first instance for his wife's support and after her death be applied toward his son's support. This is the plain meaning of the words.

Even if we should undertake the task of probing the mind of the deceased, we are prohibited from holding that he intended other than what he so plainly stated in his trust instrument. 2 Scott, Trusts, p. 1158 (2d ed., 1956). We hold, therefore, that the income from this trust was restricted to the fulfillment and satisfaction of the decedent's obligation to support his wife.

Petitioners' second contention is twofold. First, petitioners take issue with the interpretation of the Court of Appeals in certain New York cases cited in its opinion in the *Dwight* case. Petitioners in this case have not shown us in what respect the Court of Appeals was in error in its impression of New York law, and hence we see no issue in this regard. See *In Re Sylvester's Trust*, 1 App. Div. 2d 463, 999, 151 N.Y.S. 2d 490, affd. 2 N.Y. 2d 808, 159 N.Y.S. 2d 828; *Sherman* v. *Skuse*, 166 N.Y. 345, 59 N.E. 990; *Rudnick* v. *Tuckman*, 1 App. Div. 2d 269, 149 N.Y.S. 2d 809; *In Re Surbeck's Estate*, 56 N.Y.S. 2d 487; *Berg* v. *Berg*, 289 N.Y. 513, 46 N.E. 2d 910; *Solemene* v. *Solemene*, 229 App. Div. 728, 241 N.Y.S. 440; and *Smith* v. *Terry*, 38 App. Div. 394, 56 N.Y.S. 447, affd. 166 N.Y. 632, 60 N.E. 1120.

Second, petitioners contend that in any event the recent decision of *Phillips* v. *Phillips*, 1 App. Div. 2d 393, 150 N.Y.S. 2d 646, affd. 2 N.Y. 2d 742, 157 N.Y.S. 2d 378, alters the face of New York law. The *Phillips* case held, in substance, that on the issue of permanent alimony for the wife the husband was equally entitled to an examination of the wife's separate assets. This right appears to have arisen from the duty of the court, under the statutes, to examine the circumstances of each party and to make a realistic appraisal of the wife's needs. Nonetheless, the court prefaced its remarks with the statement that the husband is obligated to support his wife, and she does not have to use her assets to fulfill his duty. We are unable to see wherein that decision aids petitioners. Assuming that a husband may examine his wife's separate assets, acquired independently of the husband, we cannot say that this leads to the conclusion that the husband cannot still use as a defense in a suit by her that he has provided for his wife. Petitioners contend that the case indicates that the labels and restrictions on property no longer mean anything between husband and wife. However that may be, we do not believe that a New York court would disregard the plain language of a trust on this supposition. *In Re Sylvester's Trust, supra*. The Court of Appeals' conclusion is not altered by the fact that a New York court will now consider the wife's assets as well as the provisions for the wife made by the husband, in fixing his duty to support her. He may still plead a trust, restricted such as the one in this case, in *pro tanto* defense. The basic New York law, as outlined by the Second Circuit, appears not to have been changed. We are, therefore, con-

strained to follow the explicit holding of the Second Circuit in *Commissioner* v. *Dwight's Estate, supra.*

Petitioners have presented no proof that the decedent's obligation to support would not, at least, have equaled the amount of income payable to his wife from the trust in question. The petitioners had the burden of proof upon this question and in the light of the decedent's wealth we hold that the decedent's own estimation in the provision of this trust of the extent of his obligation to provide for his wife did not exceed what the law would have required of him. Therefore, the entire value of the trust is includible in his gross estate.

Reviewed by the Court.

*Decision will be entered under Rule 50.*

WITHEY, *J.*, dissents.