

# Missouri Court of Appeals
## Southern District
### Division Two

| | | |
|---|---|---|
| LILLIAN SINGLETON, | ) | |
| | ) | |
| Plaintiff-Respondent, | ) | |
| | ) | |
| vs. | ) | No. SD37106 |
| | ) | |
| SHEILA SINGLETON, et al., | ) | **Filed:  April 6, 2022** |
| | ) | |
| Defendants-Appellants. | ) | |

APPEAL FROM THE CIRCUIT COURT OF STODDARD COUNTY

The Honorable H. Mark Preyer, Special Judge

**REVERSED AND REMANDED**

Sheila Singleton, Chad Singleton, and Rusty Singleton (collectively, "Appellants") appeal the trial court's judgment reforming a warranty deed divesting Appellants of their interest in certain real property.  Following a bench trial, the trial court entered its judgment reforming a deed executed by Lillian Singleton ("Lillian") and her deceased husband, J.C. Singleton ("J.C."), in 1995, removing Dennis Singleton ("Dennis"), one of their three children, as a remainderman.[1]  Dennis passed away on June 28, 2014, prior to Lillian discovering the alleged error in the deed and filing this lawsuit

---

[1] We refer to the parties by their given names to avoid any confusion herein since they share their surname.  No disrespect is intended.

seeking reformation. Appellants are Dennis's surviving heirs at law: his wife, Sheila Singleton ("Sheila"), and their two surviving adult children, Chad Singleton ("Chad") and Rusty Singleton ("Rusty"). Appellants present five points on appeal, three of which allege the trial court misapplied the law and two of which allege that the judgment was not supported by substantial evidence. Finding that point one is dispositive of the appeal, we conclude that the trial court's judgment is erroneous because it misapplied the law when it reformed the deed absent clear, cogent, and convincing evidence of fraud or mutual mistake. Accordingly, the trial court's judgment is reversed. The case is remanded with directions to enter a judgment denying Lillian's claim for reformation of the deed.

## Factual and Procedural Background

### Evidence at October 2020 Bench Trial

Lillian was married to J.C., and they had three children born of the marriage, Dennis, Kelly and Keith.[2] Dennis married Sheila and they had two children, Chad and Rusty. Lillian and J.C. owned two tracts of land. One tract consisted of approximately 71 acres ("Tract I") and one tract consisted of approximately 40 acres ("Tract II"). They talked to Donald Rhodes ("Mr. Rhodes"), an attorney who had practiced law for 47 years and had a general practice in Bloomfield, Missouri, about leaving the land to their children. Mr. Rhodes was familiar with Lillian and J.C. as he became acquainted with Lillian right after he started practicing law when she asked him to assist her employer in collecting delinquent accounts. Mr. Rhodes met with Lillian and J.C. in February 1995,

---

[2] During trial, Lillian, who was around 92 years old, initially could not remember Keith's name, but subsequently identified him.

and was instructed to prepare two deeds. Subsequently, on February 15, 1995, Lillian and J.C. executed the warranty deed at issue in this case covering Tract I (the "Deed").[3]

In the Deed, Lillian and J.C., as "husband and wife," conveyed a life estate to themselves with a remainder interest to their three children. Specifically, the Deed stated:

> J.C. SINGLETON and LILLIAN SINGLETON, husband and wife, for their lifetime and at the death of the last to die, the remainder to DENNIS M. SINGLETON, JAMES KEITH SINGLETON, and KELLY R. KINCADE, as tenants-in-common.

Lillian and J.C. signed the Deed at the same time. After its preparation, the Deed was recorded at Volume 287, Page 844, at the Office of the Recorder of Deeds in Stoddard County. Mr. Rhodes never met with Dennis, Keith, or Kelly regarding the preparation of the Deed, and his services were paid for by Lillian and J.C. J.C. died in February 1998.

In 2018, around four years after Dennis died, Lillian, accompanied by her daughter Kelly, went to see Mr. Rhodes to inquire if Lillian needed a will and had the two deeds with her. Mr. Rhodes explained how the deeds read and Lillian informed him that the Deed concerning Tract I was incorrect in that Dennis was not to be on both deeds. Lillian had not discovered the alleged error in the Deed prior to that conference with Mr. Rhodes. According to Lillian, she did not intend for Dennis to receive a remainder interest in Tract I. She only intended for Dennis to have a remainder interest in Tract II. But the deeds, as prepared, left Dennis a share in both farms. Mr. Rhodes sent a letter to Appellants requesting they convey their interest in Tract I back to Lillian, Keith, or Kelly. Lillian filed the lawsuit to correct the alleged error after receiving no response from Appellants.

---

[3] At the time of the trial, the other deed covering Tract II was not at issue.

Lillian's Second Amended Petition requested the trial court set aside or reform the Deed because it was incorrectly prepared in that it included Dennis as a remainderman but she only intended to grant a remainder interest to Dennis's siblings, Keith and Kelly, and omit Dennis. On its face, Lillian's Second Amended Petition (incorporating by reference her original "Petition to Set Aside Deed") set forth that she and J.C. went to Mr. Rhodes's office and requested he prepare two warranty deeds with instructions on what should be conveyed and who it should be conveyed to and that Mr. Rhodes prepared the deeds but not as he was instructed to do by J.C. and Lillian. At trial, and over Appellants' objections as to parol evidence and relevance, Lillian testified consistent to her pleadings – that she did not intend for Dennis to receive a remainder interest in Tract I and that she only intended for him to have a remainder interest in Tract II, and that Dennis had received the other land at the same time the Deed was prepared.[4]

---

[4] The trial court reserved ruling on the objections, granted Appellants a "continuing and ongoing objection" to "any extrinsic evidence of intent or mistake" "through" Lillian, and permitted Lillian to testify that "there's an error on" the Deed. The "error" to which she testified was that Dennis was "not supposed to be on there." Over another "relevance" objection by Appellants, the trial court again reserved ruling, granted Appellants a continuing objection, and permitted Lillian to testify that Dennis had received other land, and "at the same time . . . [the Deed] was prepared, we had prepared one for the 40 acres for Dennis when we were deceased." "We wanted" the Deed "to go to Kelly and Keith." Appellants further objected to Lillian's use of the word "we" in her previous answers on the ground J.C.'s "declarations in this case" "constitute [inadmissible] hearsay." The trial court ultimately sustained Appellants' objection and struck any reference to using "we" finding that testimony as to J.C.'s intent would be hearsay and beyond the scope of the exam, but that Lillian could certainly testify as to her own intentions. No evidence was admitted at trial regarding J.C.'s intentions or J.C. joining in Lillian's mistake on the Deed because the trial court excluded evidence of J.C.'s statements to Lillian, Mr. Rhodes, and Keith.

Mr. Rhodes also testified at trial over Appellants' objection. He testified that, according to his notes from the February 1995 meeting, one deed involved 40 acres and it was to be prepared granting a life estate to Lillian and J.C., and upon the last to die, to Dennis for his life, and upon his death, to Dennis's children, Chad and Rusty.[5] The other deed involved 71 acres and was to be prepared granting a life estate to Lillian and J.C., and upon the last to die, to Keith and Kelly as tenants-in-common. Mr. Rhodes testified that his office made a mistake by adding Dennis as a remainderman to the Deed regarding the 71 acres.

Kelly testified at trial she knew two deeds existed but she had never seen them, and further testified, over objection, as to what Lillian told her at some unspecified time

[5] Mr. Rhodes created "notes" at the time he met with J.C. and Lillian about the two deeds. Over Appellants' objection on the grounds of "parol evidence," "relevance," and, as to J. C.'s declarations, "hearsay," where the trial court reserved ruling and granted Appellants a continuing objection, Mr. Rhodes testified that a note made on February 6, 1995, stated:

> "Office conference on 2/6/95. Fixed two deeds from J.C. and Lillian Singleton to J.C. and Lillian Singleton, for their lifetime and at the death of the last to die, to Dennis Singleton, for his lifetime and at his death, the remainder to Chad Singleton and Rusty Singleton. Then 39 to 40 acres, more or less." I'd written the old Gladden Farm and marked that out, and written under it Morgan Farm.

Mr. Rhodes also testified,

> under that I have "from J.C. and Lillian Singleton to J.C. and Lillian Singleton, for their lifetime and at the death of the last to die, the remainder to Kelly Kincade and Keith Singleton." Then I've written, "for their lifetime and at the death of last to die, the remainder to Renee Kincade." And I've marked out, "for their lifetime and at the death of the last to die, the remainder to Kelly [sic] Kincade." And under that I have the 71 acres.

Mr. Rhodes then added that the note:

> [W]ould indicate that the larger farm tract of land went to -- at the death of Mr. and Mrs. Singleton, to Kelly Kincade and Keith Singleton; and the 39 to 40 acres went to Dennis Singleton for his lifetime at Mr. and Mrs. Singleton's death, and at Dennis's death, then to his children Chad and Rusty. Which would seem like the fair way to divide it, you know, equally among the three children.

5

and what Chad had told her about the deeds following Lillian's conference with Mr. Rhodes.[6]  The trial court allowed both Keith and Renee Linden Kincade ("Renee"), Kelly's daughter, to make sworn statements at the conclusion of trial over Appellants' objection and motion to strike.[7]

<u>February 2021 Judgment</u>[8]

The trial court entered its judgment on February 19, 2021.  In its judgment, the trial court overruled Appellants' parol evidence and relevance objections holding an ambiguity could be found when a simultaneous transaction and deed were considered together, and that scrivener's testimony could be used to create an ambiguity in the Deed.  The trial court also found that Lillian's mistake could be imputed to J.C. by virtue of their ownership of the real property as tenants by the entireties.  Finally, the trial court

---

[6] The trial court reserved ruling on the objection, granted Appellants a continuing objection, and permitted Kelly to testify that "[m]y mom told me that there were deeds, and that Dennis got the Gladden Farm, and the rest of the property with the homestead on it was split between my other brother and myself."  Kelly testified she believed the division as intended by her mother would have been roughly equal between the children with Dennis receiving "one to two acres" more than her and Keith.

[7] Appellants moved to strike on the grounds of "parol evidence, relevance, hearsay," and the trial court reserved ruling on the motion and granted a continuing objection while allowing the testimony.

[8] Following a motion to amend the trial court's February 19, 2021 judgment and a request for rulings, both filed on March 17, 2021, the trial court entered its "Judgment Denying the Motion to Amend the Judgment and/or Motion for New Trial and Confirming Trial Evidentiary Rulings" on May 11, 2021.  The post-judgment rulings included:  (1) Lillian's post-trial motion to conform the pleadings to the evidence was denied instead of granted; and (2) the trial court "confirm[ed] that the hearsay objections concerning any words or intent of J.C. Singleton were sustained. . . . The Court did not consider such testimony or statements in rendering its Judgment."

concluded that equity affords reformation of an instrument unsupported by consideration at the donor's request based upon the donor's unilateral mistake. The trial court's judgment reformed the Deed to exclude Dennis as remainderman, divesting Appellants' interest in the property. On May 11, 2021, the trial court issued its order denominated "Judgment" denying Appellants' post-trial motions. Appellants timely filed this appeal asserting five points of trial court error.

## Analysis

### Standard of Review

In court-tried cases, our standard of review is governed by *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976):

> [T]he decree or judgment of the trial court will be sustained by the appellate court unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law. Appellate courts should exercise the power to set aside a decree or judgment on the ground that it is 'against the weight of the evidence' with caution and with a firm belief that the decree or judgment is wrong.

*Id.* at 32. In reviewing the trial court's judgment "'[a]ll evidence and inferences are viewed in the light most favorable to the judgment, and all contrary evidence and inferences are disregarded.'" *Belden v. Donohue*, 325 S.W.3d 515, 517 (Mo. App. S.D. 2010) (quoting *Schroeder v. Proctor*, 280 S.W.3d 724, 726 (Mo. App. W.D. 2009)).

> Further, "[d]ue regard shall be given to the opportunity of the trial court to have judged the credibility of witnesses upon appellate review of a case tried without a jury . . ." and the "trial court is vested with the discretion to believe or disbelieve all, part, or none of any witness' testimony."

*Belden*, 325 S.W.3d at 517 (quoting *McCord v. Gates*, 159 S.W.3d 369, 373 (Mo. App. W.D. 2004)). While deference is given for factual findings, this Court "review[s] conclusions of law without deference to the trial court and 'independently evaluate[s]

whether the trial court properly declared or applied the law.' ***Missouri Land Dev. Specialties, L.L.C. v. Concord Excavating Co.***, 269 S.W.3d 489, 496 (Mo. App. E.D. 2008)." ***Ford v. Skaggs Chiropractic, LLC***, 599 S.W.3d 264, 267 (Mo. App. S.D. 2020).

<u>Discussion</u>

Appellants' first point is dispositive of this appeal, and we do not reach Appellants' remaining four points.

Appellants assert in their first point that the trial court erroneously declared and applied the law by reforming the Deed solely on parol evidence because the Deed was unambiguous, that neither the contemporaneous Tract II transfer nor scrivener's testimony could create an ambiguity in the Deed, and Lillian's mistake was unilateral. We need not reach the first two issues, however, because assuming without deciding that the trial court was correct on those issues, we nevertheless determine that Lillian's unilateral mistake, standing alone without any evidence of fraud, was not a legal basis for reforming the Deed.

"[T]he cancellation of a deed 'is an exertion of the most extraordinary power of a court of equity, which ought not to be exercised except in a clear case.'" ***Lastofka v. Lastofka***, 99 S.W.2d 46, 54 (Mo. 1936) (quoting ***Cohron v. Polk***, 158 S.W. 603, 609 (Mo. banc 1913)). Likewise, "'[r]eformation of a written instrument is an extraordinary equitable remedy and should be granted with great caution and only in clear cases of fraud or mistake.'" ***Ethridge v. TierOne Bank***, 226 S.W.3d 127, 132 (Mo. banc 2007) (quoting ***Morris v. Brown***, 941 S.W.2d 835, 840 (Mo. App. W.D. 1997)); ***Link v. Kroenke***, 909 S.W.2d 740, 745 (Mo. App. W.D. 1995).

8

Generally, "'[a] mistake affording ground for the relief of reformation must be mutual and common to both parties to the instrument. It must appear that both have done what neither intended.'" *Allan v. Allan*, 364 S.W.2d 578, 581 (Mo. 1963) (quoting *Walters v. Tucker*, 308 S.W.2d 673, 675 (Mo. 1957)). "'A mutual mistake occurs when both parties, at the time of contracting, share a misconception about a basic assumption or vital fact upon which they based their bargain.'" *Husch & Eppenberger, LLC v. Eisenberg*, 213 S.W.3d 124, 134 (Mo. App. E.D. 2006) (quoting *Alea London Ltd. v. Bono-Soltysiak Enterprises*, 186 S.W.3d 403, 415 (Mo. App. E.D. 2006)). Here, the trial court determined there was no mutual mistake and that determination is not challenged on appeal.

The law in Missouri is well-settled: generally, equity will not reform a deed based upon unilateral mistake. *Hood v. Owens*, 293 S.W. 774, 778 (Mo. 1927). A limited exception to that general rule has been recognized and articulated as follows:

> The law permits reformation of instruments to reflect the true intention of the parties when the error has arisen by the unilateral mistake of one party and that mistake is accompanied by clear and convincing evidence of some sort of fraud, deception or other bad faith activities by the other party that prevented or hindered the mistaken party in the timely discovery of the mistake.

*Alea London Ltd.*, 186 S.W.3d at 416 (internal quotations and citation omitted).

In *Hood*, our Supreme Court quoted with approval its previous decision in *Dougherty v. Dougherty*, 102 S.W. 1099 (Mo. 1907):

> There is no cogent and convincing testimony in this record showing a mutual mistake. Courts of equity will reform a deed where there is cogent and convincing proof of a mutual mistake, but such is not the record before us. [. . .]Nor will it do to say that the mistake of the scrivener Linville will suffice to show a mutual mistake. Where the scrivener acts for both parties and makes the mistake, then proof of his mistake establishes the mutual mistake, for he was the agent of both parties. This record shows that

9

Linville acted under the sole direction of one of the grantees, and in the absence of the grantor. His mistake was the mistake of the grantees, but not the mistake of the grantor, for whom he in no way acted, under the proof in this case. The mistake is purely unilateral and one which courts of equity do not reform.

*Hood*, 293 S.W. at 778 (quoting *Dougherty*, 102 S.W. at 1101-02).

The Supreme Court also quoted with approval its earlier decision in *Parker v. Vanhoozer*, 44 S.W. 728 (Mo. 1898):

But while a court of equity will correct a mistake in a written instrument, the evidence that there has been a mistake should be clear and convincing, because in equity, as in law, the prima facie presumption is indulged that the written contract or instrument exhibits the ultimate intention. [. . .] The burden, therefore, is upon the party asserting the mistake. [. . .] Moreover, the mistake must be mutual and both the agreement and the mistake must be made out by satisfactory and clear evidence. . . .

*Hood*, 293 S.W. at 778-79 (quoting *Parker*, 44 S.W. at 729) (internal citations omitted).

Using *Dougherty* and *Parker* as guidance, the Supreme Court in *Hood* found that the record showed conclusively that the scrivener acted under the sole discretion of the grantors without any direction from and in the absence of the grantees, and that the alleged scrivener's mistake was only the mistake of the grantors, not the grantees. *Id.* at 779. The Court held the mistake was purely unilateral and not one which a court of equity would reform. *Id.*

Here, Lillian pleaded, and the clear, cogent, and convincing evidence at trial established, that she and J.C. went to Mr. Rhodes's office alone, that they paid for the deeds, that Mr. Rhodes never met with the grantees, and that neither Dennis, Keith, nor Kelly had knowledge of the deeds at the time they were drafted. The record shows that Mr. Rhodes acted on behalf of and under the sole direction of Lillian and J.C., in the absence of the grantees, making the mistake purely unilateral under the law. There were

10

no allegations or evidence presented of fraud, deception, or other bad faith activities by Dennis or the Appellants, as required for reformation based upon a unilateral mistake. *See Alea London Ltd.*, 186 S.W.3d at 416. Lillian had the burden of proving that a mutual mistake or fraud occurred to allow reformation of the Deed. She failed to do so. The trial court misapplied the law in entering the judgment reforming the Deed to exclude Dennis as a remainderman.

Lillian references, and the trial court relied heavily upon, the Eastern District's statement of a purported general rule of law in *Kemna v. Graver*, 630 S.W.2d 160 (Mo. App. E.D. 1982). That reliance, however, is misplaced in that *Kemna* failed to follow the controlling Supreme Court precedent of *Hood* without any analysis explaining its deviation.

The meager facts given in *Kemna* facially appear similar to the facts before this Court. The crux of the *Kemna* court's decision, however, ultimately rested on whether the grantee was negligent or neglectful in failing to act sooner to discover the error in a deed. The trial court concluded the grantor had been grossly negligent in not acting sooner, so it refused to reform the deed. *Id.* at 161. The *Kemna* court decided that this conclusion was an erroneous application of the law. *Id.* In disposing of the case because of this misapplication of law, however, the *Kemna* court stated, "It is a well-settled general rule that equity will reform a voluntary instrument of conveyance at the suit of the donor when the instrument does not express the donor's intent in making the gift." *Id.* The *Kemna* court cited as supporting authority only to a 1930 ALR, a 1948 article by H. McClintock, a 1959 Michigan Law Review article, and, as its lone purported Missouri support *Phillips v. Cope*, 111 S.W.2d 81, 82 (Mo. 1937). Yet, in *Phillips*, the trial

11

court's denial of reformation was reversed on appeal because "[u]nder the state of the record, plaintiff was entitled to the relief prayed for[,]" based upon a pleaded and proven mutual mistake. *Id.* at 81-84. Because its holding was based upon a finding of mutual mistake, however, *Phillips* provides no support for the stated general rule. The *Kemna* court, therefore, cited no relevant Missouri authority supporting its purported general rule of law. Moreover, the *Kemna* court omitted any analysis of the distinction in Missouri between a unilateral mistake, as opposed to a mutual mistake, giving rise to reformation and omitted any mention, analysis, or application of *Hood*.

We are constitutionally bound to follow the latest controlling decision of the Supreme Court of Missouri. Mo. Const. art. V, sec. 2; *Knorp v. Thompson*, 175 S.W.2d 889, 894 (Mo. 1943). As such, we are obligated to follow *Hood*, not *Kemna*. Appellants' first point, therefore, is granted. The trial court's judgment is reversed and remanded with directions to enter judgment in favor of Appellants on Lillian's claim for reformation of the Deed.

JENNIFER R. GROWCOCK, J. – OPINION AUTHOR

GARY W. LYNCH, C.J. –  CONCURS

MARY W. SHEFFIELD, P.J. – CONCURS