ESTATE OF ARTHUR S. DWIGHT, DECEASED, BARBARA CHAPIN HAMBY AND JOSEPH C. BENSON, EXECUTORS, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 25873. Promulgated February 15, 1952.

*Dana R. Koons, Esq.*, and *George J. Schaefer, Esq.*, for the petitioners.

*William A. Schmitt, Esq.*, for the respondent.

&ast; &ast; &ast; &ast; &ast; &ast; &ast;

1320

OPINION.

HILL, *Judge :* The sole issue presented concerns the question whether the values of the whole or any part of the corpora of two trusts created by the decedent, one in 1931 and the other in 1935, are includible in decedent's gross estate. No issue has been raised that the transfers were made in contemplation of death.

It is respondent's position that the decedent retained the enjoyment of the transferred property or the income therefrom during his lifetime, thereby rendering the values of the trusts includible in decedent's gross estate under the applicable provisions of the internal revenue law.[1] In support of this position respondent argues that the decedent

---

[1] SEC. 811. GROSS ESTATE.

The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated, except real property situated outside of the United States—

\*　　\*　　\*　　\*　　\*　　\*　　\*

(c) TRANSFERS IN CONTEMPLATION OF, OR TAKING EFFECT AT, DEATH.—

(1) GENERAL RULE.—To the extent of any interest therein of which the decedent has at any time made a transfer (except in case of a bona fide sale for an adequate and full consideration in money or money's worth), by trust or otherwise—

\*　　\*　　\*　　\*　　\*　　\*

(B) under which he has retained for his life or for any period not ascertainable without reference to his death or for any period which does not in fact end before his death (i) the possession or enjoyment of, or the right to the income from, the property, or (ii) the right, either alone or in conjunction with any person, to designate the persons who shall possess or enjoy the property or the income therefrom ; or

\*　　\*　　\*　　\*　　\*　　\*　　\*

The above section is applicable to the transfer made by the decedent during the year 1935. However, the first transfer was made by him in December 1931 ; therefore, the Joint Resolution of Congress on March 31, 1931, amending the Revenue Act of 1926, is applicable thereto by virtue of the provisions of section 7 (b) of the Technical Changes Act of 1949, as amended, which read as follows :

(b) The amendment made by subsection (a) shall be applicable with respect to estates of decedents dying after February 10, 1939. The provisions of Section 811 (c) of the Internal Revenue Code, as amended by subsection (a), shall (except as otherwise specifically provided in such section or in the following sentence) apply to transfers made on, before, or after February 26, 1926. The provisions of Section 811 (c) (1) (B) of such code shall not, in the case of a decedent dying prior to January 1, 1950, apply to—

(1) a transfer made prior to March 4, 1931 ; or

(2) a transfer made after March 3, 1931, and prior to June 7, 1932, unless the property transferred would have been includible in the decedent's gross estate by reason of the amendatory language of the joint resolution of March 3, 1931 (46 Stat. 1516).

\*　　\*　　\*　　\*　　\*　　\*　　\*

Section 302 of the Revenue Act of 1926 as amended by Joint Resolution of March 31, 1931, reads as follows :

Sec. 302. The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated—

\*　　\*　　\*　　\*　　\*　　\*

(c) To the extent of any interest therein of which the decedent has at any time made a transfer, by trust or otherwise, in contemplation of or intended to take

had a legal obligation existing at the time of his death to support the beneficiaries and that when the decedent transferred the property in trust he retained the right to have the income therefrom applied toward the satisfaction of this obligation.

It has been held that where a decedent transferred property in trust, but retained the right to have the income therefrom applied towards the payment of the legal obligations existing at the time of his death, he retained income from the property and its value is includible in his gross estate. *Mathilde B. Hooper, Admnx.*, 41 B. T. A. 114; *Estate of John Howard Helfrich*, 1 T. C. 590, affd. 143 F. 2d 43. Cf. *Estate of Paul F. Donnelly*, 38 B. T. A. 1234, revd. *Helvering* v. *Mercantile-Commerce Bank & Trust Co.*, 111 F. 2d 224; *Estate of Clayton William Sherman*, 9 T. C. 594 (appeal dismissed); *Wishard* v. *United States*, 143 F. 2d 704; *Estate of Payson Stone Douglass*, 2 T. C. 487, affd. 143 F. 2d 961.

With respect to the existence of a legal obligation on the part of the decedent to support the beneficiaries, we agree with the respondent that at the time of the decedent's demise he was under a legal obligation to support his wife, the recipient of all the income from the second trust and part of the income from the first trust; however, the other beneficiaries of the first trust, the stepchildren of the decedent, were then adults and he was under no legal obligation to furnish their support.[2]

The respondent has made no alternative argument that only part of the corpus of the first trust should be included in the value of the decedent's estate. However, we deem it unnecessary to consider this question since we believe that in neither of the two transfers did the decedent retain the right to have the income applied towards his legal obligation to support his wife. In this respect we agree with the respondent's argument that the ultimate question to be decided is not to what use the income was put but rather *whether the decedent reserved to himself an enforceable right to have the income applied*

---

effect in possession or enjoyment at or after his death, including a transfer under which the transferor has retained for his life or any period not ending before his death (1) the possession or enjoyment of, or the income from, the property or (2) the right to designate the persons who shall possess or enjoy the property or the income therefrom; except in case of a bona fide sale for an adequate and full consideration in money or money's worth. * * *

While the provisions of section 811 (c) of the Code include certain amendments made with respect to the provisions of the Joint Resolution, both laws contain provisions which require that where a decedent made an *inter vivos* transfer of property but retained the income from such property or the enjoyment thereof, the transferred property is includible in the value of his gross estate. Accordingly, for the purposes of the issue presented herein, there is no need for discussion of any distinctions which exist between the two provisions. We previously decided a similar issue as is presented herein where the governing law was the Joint Resolution of March 31, 1931, in *Mathilde B. Hooper, Admnx., Estate of James P. Hooper*, 41 B. T. A. 114.

[2] New York Social Welfare Law, Section 101, as amended, L. 1945, c. 656, § 1. See *People* v. *Williams*, 292 N. Y. S. 458.

*towards his wife's support.  Estate of Clayton William Sherman, supra.*  Respondent points to the language contained in each of the trust instruments to the effect that the trustee was required to pay over to the beneficiaries the net income of the trusts for their *"support and maintenance"* [3] as conclusive proof that the decedent retained this right.

Looking at the two transfers made by the decedent, we see that both trusts were irrevocable.  In each case the trustee was a third party and decedent-settlor retained no control over the trustee.  The provisions of the instruments stated definitely and unequivocally that decedent's wife was to receive 40 per cent of the net income of the first trust and (all) the income of the second trust.  Nowhere in either trust indenture is there any provision that the trustee should have the power to refrain from paying the income to the wife if she failed to meet her expenses for maintenance and support, nor do the instruments contain any provisions empowering the trustee to pay such expenses directly if the beneficiary failed or refused to pay.  No provision is contained in either instrument which would indicate that decedent intended that his wife's use of the income was to be restricted to the payment of her expenses for support and maintenance.

*Helvering* v. *Mercantile-Commerce Bank & Trust Co., supra,* was relied upon by the respondent.  There the decedent-settlor established a trust in favor of his wife and the trust instrument provided that she was to receive a certain sum monthly to be used and applied by her upon their family and joint living expenses.  Such payments were to provide in full for her own bills and expenses and for her own care, maintenance and support, and if at any time she did not use such income to pay such expenses then the trustees were empowered to apply and use the income to pay and discharge and take care of her maintenance, care and support and apply any excess to the joint living expenses.  The trustees were to continue to make payments to her until such time as the settlor might deliver to them an affidavit accompanied by statements of unpaid accounts incurred by the beneficiary showing that she was not applying the payments as provided in the trust.  In so far as the holding in that case may be deemed inconsistent with our holding here, we respectfully decline to follow it. *Mathilde B. Hooper, Admnx., supra,* is distinguishable.  In that case, decided in favor of the respondent, the decedent-settlor, being heavily in debt, transferred all his property to a trust.  The trustees were authorized to collect his salary and to use it and other trust income to pay certain insurance premiums, to pay decedent's wife a certain amount yearly, and to pay off decedent's debts.  In the trust instru-

---

[3] This language is contained in paragraph First of each of the two trust indentures, set out in our findings of fact above.

ment the payments to decedent's wife were conditioned on her using them to maintain a home for herself and decedent and to pay the cost of supporting and educating their children.

With respect to the use of the phrase "for the support and maintenance," its existence in the trust instruments neither adds to nor reduces the rights of the parties as they otherwise appear. At most it merely indicates the motive or desire of the settlor in creating the trusts.[4] Its value even for such a purpose is limited in this case since the evidence indicates that with respect to the second trust the petitioner had expressed other motives which prompted him to establish that trust.[5]

Accordingly, we hold that the decedent-settlor did not retain the right to have income from the trusts applied towards his legal obligation to support his wife, and no part of the value of either of the two trusts is includible in the value of the decedent's gross estate.

Reviewed by the Court.

*Decision will be entered under Rule 50.*

---

RAUM, *J.*, dissenting: In *Helvering* v. *Mercantile-Commerce Bank & Trust Co.*, 111 F. 2d 224, the Court of Appeals for the Eighth Circuit reversed the decision of this Court in *Estate of Paul F. Donnelly*, 38 B. T. A. 1234. I think that the decision of the Court of Appeals is correct, and that it cannot fairly be distinguished from the present case, at least to the extent that the income from the trusts herein was dedicated to the support and maintenance of the decedent's wife. It is said that the trust provisions in the *Mercantile-Commerce Bank* case gave the settlor an "enforceable right" to have the income applied for the support and maintenance of his wife, whereas no such right existed here. But the trust instruments herein definitely called for the payment of income to the wife for her maintenance and support, and it is not accurate to suggest that these provisions were merely hortatory. Surely, if she squandered that income and then sued the grantor for maintenance and support, the existence of these trusts would be a good defense. By establishing the trusts, the decedent effectively discharged his obligation to maintain and support his wife, to the full extent that income therefrom

---

[4] Cf. Griswold, Spendthrift Trusts, 2d ed., section 433, and Bogert, Trusts and Trustees, section 226, and cases therein cited.

[5] With respect to the decedent's desire in creating the second trust, the evidence indicates that he wished to furnish his wife with additional income to meet the maintenance expenses of their Florida home and to meet the medical expenses of her adult daughters by her former marriage. It is apparent, therefore, he desired that a substantial portion of the payments be used for purposes other than his wife's support and maintenance. Furthermore, the wife testified that in discussions with her husband there was an understanding that the second trust was to provide her with additional money "to have it for what I wanted to use it for."

was paid over to her. Thus, by providing for the application of income to the discharge of that legal obligation, he to that extent in fact retained, within the meaning of section 811 (c), "the possession or enjoyment of, or the right to the income from" the property which he transferred in trust.

TURNER, HARRON, and OPPER, *JJ.*, agree with this dissent.