ESTATE OF JACK F. CHRYSLER, DECEASED, EDITH B. CARR, JOHN W. DRYE, JR., AND MANUFACTURERS HANOVER TRUST COMPANY, EXECUTORS, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 1322–63. Filed April 7, 1965.

*John W. Drye, Jr.*, and *Arthur W. Siegrist*, for the petitioner.
*Philip Shurman*, for the respondent.

ARUNDELL, *Judge:* Respondent determined a deficiency in estate tax of $1,023,714.51.

Respondent included in decedent's gross estate certain transfers made during decedent's life in the total amount of $1,601,875.19 made up of the following items:

| | |
|---|---:|
| Item 2 | $534, 920. 37 |
| Item 3 | 698, 120. 83 |
| Item 4 | 28, 537. 66 |
| Item 5 | 28, 067. 54 |
| Item 7 (items 11 through 37) | 155, 615. 25 |
| Item 8 (items 38 through 65) | 156, 613. 54 |
| Total transfers included in gross estate | 1, 601, 875. 19 |

The parties have stipulated that the value of item 7 at the date of decedent's death was $156,251.16 instead of $155,615.25, and that included therein were "proceeds of transfers made by persons other than decedent in the amount of $11,268.75, which respondent concedes is not a part of the taxable estate."

The parties have stipulated that the value of item 8 at the date of decedent's death was $155,252.95 instead of $156,613.54, and that included therein were "proceeds of transfers made by persons other than decedent in the amount of $12,527.50, which respondent concedes is not a part of the taxable estate."

The parties have also stipulated that items 4 and 5 "do not form a part of decedent's taxable estate."

This leaves for our consideration three issues to be decided as follows:

(1) Whether items 2 and 3 are includable in decedent's gross estate under section 2036(a), I.R.C. 1954;

(2) Whether $77,435.15 of item 7 and $79,317.57 of item 8 are includable in decedent's gross estate under section 2040, I.R.C. 1954; and

(3) Whether $78,816.01 of item 7 and $75,935.38 of item 8 are includable in decedent's gross estate under sections 2036(a) and 2038 (a)(1), I.R.C. 1954.

(NOTE: Regarding items 7 and 8, the record does not show how the conceded amounts of $11,268.75 and $12,527.50 are to be apportioned between issues 2 and 3. This apportionment, if necessary, will be made by the parties in their recomputations to be made under Rule 50, together with such credit for Federal gift taxes, credit for State death taxes, and credit for foreign death taxes to which petitioner shall be entitled.)

FINDINGS OF FACT

All the facts were stipulated. The stipulation is incorporated herein by reference.

*Facts in General*

Petitioner is the estate of Jack F. Chrysler, deceased, who died on November 7, 1958, a resident of the city, county, and State of New York, leaving a will of which Edith B. Carr, John W. Drye, Jr., and Manufacturers Hanover Trust Co. are the executors. The estate tax return, Form 706, was timely filed with the district director of internal revenue, Manhattan, New York.

Decedent was survived by his wife, Edith (now Edith B. Carr), and two children, Helen and Jack, Jr.

At all times material herein, decedent was engaged in the investment business. At the time of his death, decedent was a member of the New York Stock Exchange and of the American Stock Exchange.

*Facts as to Issue 1*

By trust indenture dated June 16, 1945, under which Nicholas Kelley, John W. Drye, Jr., and Harry C. Davis were trustees, decedent created an irrevocable trust for the benefit for life of his daughter, Helen F. Chrysler, who was born on February 2, 1944.

By trust indenture dated December 6, 1946, under which Nicholas Kelley, John W. Drye, Jr., and Harry C. Davis were trustees, decedent created an irrevocable trust for the benefit for life of his son Jack F. Chrysler, Jr., who was born on May 31, 1946.

The provisions of each trust were identical in all material respects except for the language necessary to make one trust pertain to the decedent's infant daughter and the other trust to his infant son. The corpus of each trust was $115,000 in cash. The trust for the daughter provided in part:

1. A. The Trustees shall hold, manage, invest and from time to time reinvest the trust estate and shall collect the income therefrom and shall pay over the net annual income therefrom to Helen Forker Chrysler, daughter of the Grantor, during her life; provided, however, that as long as Helen Forker Chrysler shall be a minor, the Trustees shall use and apply so much of the net annual income and any accumulated income of the trust estate as the Trustees shall deem advisable for the maintenance, education and support of said Helen Forker Chrysler; or instead of making personal application of such income, the Trustees may transfer, assign and pay over so much of such income as they deem advisable to either parent or the guardian of the person or property of said Helen Forker Chrysler, or the person with whom she resides, to be by such parent, guardian or person so used and applied (and the receipt of such parent, guardian or person shall be full acquittance and discharge to the Trustees in respect of any such sum or sums so paid over, and the Trustees shall have no duty or responsibility in supervising the application of any such income) and the Trustees shall accumulate the balance of such income during the minority of said Helen Forker Chrysler, and upon her attaining the age of twenty-one years, the Trustees shall transfer, assign and pay over to her all accumulations of income on the trust estate; or if said Helen Forker Chrysler shall die before attaining the age of twenty-one years, all accumulations of income on the trust estate shall be transferred, assigned and paid over to the executor or administrator of the estate of said Helen Forker Chrysler.

In the management, administration and investment of any accumulated income, the Trustees shall have all the powers, authority and discretion given to them with respect to the trust estate by any provisions of this trust indenture.

Each trust provided for the complete disposition of the remainder after the termination of the respective life estate.

The fair market value on November 7, 1958, of the principal of each of the two trusts was $534,920.37 and $698,120.83, respectively, which amounts were included in the decedent's gross estate as items 2 and 3, respectively.

Decedent was never a trustee under either trust. None of the income of either trust collected by the trustees was used for the maintenance, education, or support of the respective beneficiary during decedent's lifetime and all such income of both trusts was taxed to the trustees and the net income of both trusts was accumulated by them.

*Facts as to Issues 2 and 3*

During his lifetime decedent made deposits of funds belonging to him in a checking account at the Hanover Bank designated as "Ac-

count No. 1—Jack F. Chrysler or Edith B. Chrysler as joint tenants with right of survivorship and not as tenants in common." Decedent also during his lifetime transferred certain securities to the names of himself and his wife as joint tenants with right of survivorship and not as tenants in common, or to the names of himself or his daughter, Helen F. Chrysler. All of the transactions with respect to such deposits and securities were recorded in a ledger which decedent maintained in his office, on which was inscribed "Helen F. Chrysler—Personal."

All of such deposits and transfers of securities were made between March 6, 1944, and January 7, 1958, both dates inclusive. There were 21 such separate transactions. The value of such deposits and transfers, as of the time when made, totaled $80,397.25. Decedent never used any of said funds or securities or the income therefrom for his own benefit.

From time to time decedent drew checks on said account among other things for the purchase of securities. Such securities, until the time of the enactment of the New York law covering gifts of securities to minors in 1956, were registered in the names of decedent and his wife as joint tenants with right of survivorship. After the enactment of the New York law with respect to gifts of securities to minors, certain of the securities were registered in the name of Jack F. Chrysler as custodian for Helen F. Chrysler, a minor, under article 8–A of the Personal Property Law of New York. The securities referred to were kept in a separate safe-deposit box, in the names of decedent and his wife as joint tenants, and no other securities were kept in that box. From time to time some of said securities were sold, the proceeds were deposited in said bank account and other securities were bought.

As a result of all of the above-mentioned transactions totaling $80,397.25, the accumulation of the income collected on the securities and the profits realized on the securities were of the value and were held on the date of decedent's death in the names of the following persons:

| Name | | Value |
|---|---|---|
| Jack F. Chrysler or Helen F. Chrysler_____ | $681.90 | |
| Jack F. Chrysler and Edith B. Chrysler, as joint tenants with right of survivorship and not as tenants in common_____ | 76,753.25 | |
| | | $77,435.15 |
| Jack F. Chrysler as custodian for Helen Forker Chrysler, a minor, under article 8–A of the Personal Property Law of New York_____ | | 78,816.01 |
| Total (item 7)_____ | | 156,251.16 |

Income tax returns with respect to the taxable income from such property were filed for decedent's daughter, Helen F. Chrysler, in each year and the taxes, if any, shown to be due thereon were paid out of such property.

Subsequent to decedent's death, all property so held in the names of decedent and his wife as joint tenants or in the name of decedent as custodian for his daughter was transferred to Edith B. Chrysler as successor custodian for Helen F. Chrysler under article 8–A of the Personal Property Law of New York.

During his lifetime decedent made deposits of funds belonging to him in a checking account at the Hanover Bank designated as "Account No. 2—Jack F. Chrysler or Edith B. Chrysler as joint tenants with right of survivorship and not as tenants in common." Decedent also during his lifetime transferred certain securities to the names of himself and his wife as joint tenants with right of survivorship and not as tenants in common, or to the names of himself or his son, Jack F. Chrysler, Jr. All of the transactions with respect to such deposits and securities were recorded in a ledger which decedent maintained in his office, on which was inscribed "Jack F. Chrysler, Jr.— Personal."

All of such deposits and transfers of securities were made between May 29, 1947, and January 7, 1958, both dates inclusive. There were 17 such separate transactions. The value of such deposits and transfers, as of the time when made, totaled $80,181.59. Decedent never used any of said funds or securities or the income therefrom for his own benefit.

From time to time decedent drew checks on said account among other things for the purchase of securities. Such securities, until the time of the enactment of the New York law covering gifts of securities to minors in 1956, were registered in the names of decedent and his wife as joint tenants with right of survivorship. After the enactment of the New York law with respect to gifts of securities to minors, certain of the securities were registered in the name of Jack F. Chrysler as custodian for Jack F. Chrysler, Jr., a minor, under article 8–A of the Personal Property Law of New York. The securities referred to were kept in a separate safe-deposit box, in the names of decedent and his wife as joint tenants, and no other securities were kept in that box. From time to time some of said securities were sold, the proceeds were deposited in said bank account, and other securities were bought.

As a result of all of the above-mentioned transactions totaling $80,181.59, the accumulation of the income collected on the securities and the profits realized on the securities were of the value and were

held on the date of decedent's death in the names of the following persons:

| Name | Value | |
|---|---|---|
| Jack F. Chrysler or Jack F. Chrysler, Jr | $209. 00 | |
| Jack F. Chrysler and Edith B. Chrysler, as joint tenants with right of survivorship and not as tenants in common | 79, 108. 57 | |
| | | $79, 317. 57 |
| Jack F. Chrysler as custodian for Jack Forker Chrysler, Jr., a minor, under article 8–A of the Personal Property Law of New York | | 75, 935. 38 |
| Total (item 8) | | 155, 252. 95 |

Income tax returns with respect to the taxable income from such property were filed for decedent's son, Jack F. Chrysler, Jr., in each year and the taxes, if any, shown to be due thereon were paid out of such property.

Subsequent to decedent's death, all property so held in the names of decedent and his wife as joint tenants or in the name of decedent as custodian for his son was transferred to Edith B. Chrysler as successor custodian for Jack F. Chrysler, Jr., under article 8–A of the Personal Property Law of New York.

Decedent filed gift tax returns, Form 709, for each of the calendar years 1945 to 1958, inclusive. All of the items included in the previously mentioned totals of $80,397.25 and $80,181.59, with the exception of the U.S. savings bonds Series E and F, were included in the total gifts shown in those returns.

OPINION

## Issue 1

Respondent contends that the values of the corpora of the two trusts (items 2 and 3) created by decedent on June 16, 1945, and December 6, 1946, are includable in the decedent's gross estate under the provisions of section 2036(a), I.R.C. 1954.[1] In so contending, the respondent in effect *assumes* that the two trusts were created for the maintenance, education, and support of his two minor children. In his brief he argues thus:

---

[1] SEC. 2036. TRANSFERS WITH RETAINED LIFE ESTATE.

(a) GENERAL RULE.—The value of the gross estate shall include the value of all property (except real property situated outside of the United States) to the extent of any interest therein of which the decedent has at any time made a transfer (except in case of a bona fide sale for an adequate and full consideration in money or money's worth), by trust or otherwise, under which he has retained for his life or for any period not ascertainable without reference to his death or for any period which does not in fact end before his death—

(1) the possession or enjoyment of, or the right to the income from, the property, or

(2) the right, either alone or in conjunction with any person, to designate the persons who shall possess or enjoy the property or the income therefrom.

Decedent established each of the trusts shortly after the respective births of his two children. The purpose for which the trusts were created was for the maintenance, education and support of his children. These trusts were an effective instrumentality through which the decedent could discharge his legal obligation to support his children. Since both of decedent's children were minors at the date of decedent's death, decedent was under a duty imposed by law to support them (Sec. 32, Domestic Relations Law of New York). Decedent could have availed himself at any time until his death to have the income applied for the support of his children.

The above argument, except for the part that decedent was under a duty imposed by law to support his minor children, is not supported by the facts. Decedent could *not* have availed himself at any time until his death of having the income applied for the support of his children. This could only be done in the discretion of the three trustees. Decedent was not one of the trustees. The trusts were irrevocable. They created life estates with remainders over. When decedent created the trusts he parted forever with all right to the income or principal of the trusts, or the right, either alone or in conjunction with any person, to designate the persons who shall possess or enjoy the property or the income therefrom.

The facts in the cases [2] principally relied upon by the respondent involve facts entirely different from the facts in the instant case. In the first case cited in the footnote the decedent there created a trust, the income of which was payable to his wife with the provision that she should use it for their family and joint living expenses and for her own maintenance and support. In *Commissioner* v. *Dwight's Estate*, 205 F. 2d 298 (C.A. 2, 1953), reversing and remanding 17 T.C. 1317, the husband decedent had created two trusts to pay the income to his wife and children for their "support and maintenance." And in *Estate of William H. Lee*, 33 T.C. 1064, our syllabus is as follows:

*Held:* Decedent, in making transfers of property in trust with income to be paid to his wife "for her maintenance and support," retained the right to have the income used to fulfill his legal obligation of support, and the trust corpus is to be included in the valuation of his gross estate. *Commissioner* v. *Dwight's Estate*, 205 F. 2d 298 (C.A. 2), followed.

In the instant case, the decedent could not direct the trustees to apply any of the income for the maintenance, education, and support of the minor beneficiaries. Sole discretion as to whether any income of the trusts was to be so applied rested and remained in the trustees. The trust instruments specifically provided that only "so much" of such

---

[2] *Helvering* v. *Mercantile-Commerce Bank & Trust Co.*, 111 F. 2d 224 (C.A. 8, 1940), reversing 38 B.T.A. 1234, certiorari denied 310 U.S. 654; *Commissioner* v. *Dwight's Estate*, 205 F. 2d 298 (C.A. 2, 1953), reversing and remanding 17 T.C. 1317; *Estate of William H. Lee*, 33 T.C. 1064.

income "as the Trustees shall deem advisable" shall be so used, and the balance accumulated.

We think the facts in the instant case are more like those in *Commissioner* v. *Douglass' Estate*, 143 F. 2d 961 (C.A. 3, 1944), affirming 2 T.C. 487, cited and relied upon by petitioner. The decedent in that case created a trust for the benefit of his four children. Neither decedent nor any of the beneficiaries was among the three trustees named. Decedent died in 1938. In the trust instrument decedent gave the trustees permission to apply the income of the minor's share to the extent that the trustees "may deem necessary for the education, support and maintenance of said minor." In denying the Commissioner's claim that one-fourth of the value of the principal of the trust was to be included in the decedent's gross estate, the court said in part:

> In addition to the theory thus advanced the Commissioner's argument cites Helvering v. Mercantile-Commerce Bank & Trust Co. et. al., 8 Cir., 111 F. 2d 224, certiorari denied, 1940, 310 U.S. 654, 60 S.Ct. 1104, 84 L. Ed. 1418. This involved a trust for a wife created by a husband in his lifetime. The income was to be paid to her for family expenses and her own maintenance and support. The Eighth Circuit held that the corpus of the trust was to be included as part of his estate for estate tax purposes. The decision is, obviously, not an authority on the question before us in this litigation. *There is certainly an important difference of fact between the trust set up for the very purpose of providing for the settlor's legal obligation to his wife and the one in which disinterested trustees have an option to apply a portion of the income for the support of the settlor's minor child.*
>
> Under the section of the estate tax law already quoted, the settlor's estate is subject to the tax if he retained the possession or enjoyment of the income from the property or the right to designate the persons who should enjoy it. But he did neither. *He granted the property to trustees, retaining nothing.* The Commissioner's argument that these trustees would be likely to do what he asked of them about assigning income for the support of a minor child departs from the "practical" and "realistic" approach we are asked, in the same argument, to take. We have no notion what the trustees would have done had such a request been made. *It is apparent, from the terms of the instrument, that the settlor could not direct or control the matter, once the trust settlement had become effective.* [Emphasis supplied.]

See also *McCullough* v. *Granger*, 128 F. Supp. 611 (W.D. Pa. 1955), and *Colonial-American National Bank* v. *United States*, 243 F. 2d 312 (C.A. 4, 1957).

We hold that the respondent erred in including items 2 and 3 in the decedent's gross estate.

### *Issues 2 and 3*

These issues involve items 7 and 8 referred to in our preliminary statement.

Under issue 2 the respondent contends that $77,435.15 of item 7 and $79,317.57 of item 8 (except for some part of the stipulated amounts of

$11,268.75 and $12,527.50) are includable in decedent's gross estate under section 2040, I.R.C. 1954.[3]

The parties have stipulated that on the date of decedent's death these amounts were held in the names of the following persons:

| Person | Allegedly for— | |
| | Daughter Helen | Son Jack. Jr. |
| --- | --- | --- |
| Jack F. Chrysler or Helen F. Chrysler_____ | $681. 90 | |
| Jack F. Chrysler or Jack F. Chrysler, Jr_____ | | $209. 00 |
| Jack F. Chrysler and Edith B. Chrysler, as joint tenants with right of survivorship and not as tenants in common _____ | 76, 753. 25 | 79, 108. 57 |
| Total _____ | 77, 435. 15 | 79, 317. 57 |

Under issue 3 the respondent contends that $78,816.01 of item 7 and $75,935.38 of item 8 (except for some part of the stipulated amounts of $11,268.75 and $12,527.50) are includable in decedent's gross estate under the provisions of sections 2036(a)[4] and 2038(a)(1),[5] I.R.C. 1954.

The parties have stipulated that on the date of decedent's death $78,816.01 of item 7 was held in the name of "Jack F. Chrysler as custodian for Helen Forker Chrysler, a minor, under article eight-a of the personal property law of New York" and that $75,935.38 of item 8 was held in the name of "Jack F. Chrysler as custodian for Jack Forker Chrysler, Jr., a minor, under article eight-a of the personal property law of New York."

In his deficiency notice the respondent originally included all of items 7 and 8 in the decedent's gross estate under the provisions of section 2033, I.R.C. 1954.[6]

---

[3] SEC. 2040. JOINT INTERESTS.

The value of the gross estate shall include the value of all property * * * to the extent of the interest therein held as joint tenants by the decedent and any other person, or as tenants by the entirety by the decedent and spouse, or deposited, with any person carrying on the banking business, in their joint names and payable to either or the survivor, except such part thereof as may be shown to have originally belonged to such other person and never to have been received or acquired by the latter from the decedent for less than an adequate and full consideration in money or money's worth: * * *

[4] See fn. 1.

[5] SEC. 2038. REVOCABLE TRANSFERS.

(a) IN GENERAL.—The value of the gross estate shall include the value of all property * * * erty * * *

(1) TRANSFERS AFTER JUNE 22, 1936.—To the extent of any interest therein of which the decedent has at any time made a transfer (except in case of a bona fide sale for an adequate and full consideration in money or money's worth), by trust or otherwise, where the enjoyment thereof was subject at the date of his death to any change through the exercise of a power (in whatever capacity exercisable) by the decedent alone or by the decedent in conjunction with any other person (without regard to when or from what source the decedent acquired such power), to alter, amend, revoke, or terminate, or where any such power is relinquished in contemplation of decedent's death.

[6] SEC. 2033. PROPERTY IN WHICH THE DECEDENT HAD AN INTEREST.

The value of the gross estate shall include the value of all property * * * to the extent of the interest therein of the decedent at the time of his death.

By an amendment to his answer the respondent now claims in the alternative that certain portions of items 7 and 8 (issue 2) are includable under section 2040, *supra*, and certain portions of items 7 and 8 (issue 3) are includable under sections 2036(a), *supra*, and 2038 (a)(1), *supra*. In his briefs the respondent did not argue that any of the properties was includable under section 2033 but argued only the alternatives.

It is the contention of petitioner that on the date of decedent's death all of the property involved in both issues 2 and 3 was owned by decedent's minor children, Helen and Jack, Jr., despite the manner of registration and that, therefore, no part of the property so involved is includable in decedent's gross estate.

It may simplify this opinion if from now on we consider both issues 2 and 3 from the daughter's standpoint alone, for whatever we say about Helen will apply equally to Jack, Jr., except for slightly different amounts which are not in dispute. What decedent did for one child he intended to do and did do for the other.

As to Helen, the detailed deposits and transfers mentioned in our findings were made by decedent as follows:

| Date | Nature of deposit or transfer | Value |
|---|---|---|
| Mar. 6, 1944 | U.S. savings bonds | $131.25 |
| Dec. 15, 1944 | do | 18.75 |
| Jan. 15, 1945 | do | 37.50 |
| Feb. 2, 1945 | do | 168.75 |
| June 16, 1945 | do | 111.00 |
| | Subtotal | 467.25 |
| Oct. 21, 1947 | Cash | 3,000.00 |
| May 27, 1948 | do | 6,000.00 |
| Jan. 7, 1949 | do | 6,000.00 |
| July 10, 1950 | do | 6,000.00 |
| Jan. 10, 1951 | do | 6,000.00 |
| Feb. 20, 1952 | do | 6,000.00 |
| Jan. 13, 1953 | do | 6,000.00 |
| Aug. 6, 1953 | do | 6,000.00 |
| Jan. 8, 1954 | 10 shares of stock | 50.00 |
| Jan. 19, 1954 | Cash | 6,000.00 |
| Jan. 20, 1955 | do | 6,000.00 |
| Mar. 2, 1955 | 500 shares of stock | 4,875.00 |
| Apr. 21, 1955 | do | 5.00 |
| Jan. 6, 1956 | Cash | 6,000.00 |
| Feb. 19, 1957 | do | 6,000.00 |
| Jan. 7, 1958 | do | 6,000.00 |
| | Total | 80,397.25 |

All of the above deposits and transfers were recorded in a ledger which decedent maintained in his office, on which was inscribed "Helen F. Chrysler—Personal." Decedent never used any of said funds or securities or the income therefrom for his own benefit.

On the date of decedent's death there had been no change made in the five alleged gifts of savings bonds except that their value had increased from the total of $467.25 to a total of $681.90. They were still held in the names of "Jack F. Chrysler or Helen F. Chrysler." The 500 shares of stock (Cooperative Pesquera Panama, S.S., com-

mon) allegedly given to Helen on April 21, 1955, were still held, on the date of decedent's death, in the names of "Jack F. Chrysler and Edith B. Chrysler, as joint tenants with right of survivorship and not as tenants in common," but the shares no longer had any value. All of the remainder of the alleged gifts to Helen of $80,397.25 were, between the date of the alleged gifts and the date of decedent's death, invested and reinvested by decedent in the purchase of securities. Those purchased *prior* to the enactment of the New York law covering gifts of securities to minors in 1956 were registered in the names of "Jack F. Chrysler and Edith B. Chrysler, as joint tenants with right of survivorship and not as tenants in common" and, on the date of decedent's death, consisted of:

| Kind of property | Value |
|---|---|
| 6 different kinds of stocks | $53,875.00 |
| Bonds of Dresser Industries, Inc | 3,172.50 |
| Cash on deposit with the Hanover Bank | 19,705.75 |
| Total | 76,753.25 |

The securities purchased *after* the enactment of the above-mentioned New York law were registered in the name of "Jack F. Chrysler, as custodian for Helen Forker Chrysler, a minor, under article eight-a of the personal property law of New York" and, on the date of decedent's death, consisted of:

| Kind of property | Value |
|---|---|
| 12 different kinds of stocks | $62,933.01 |
| 2 different kinds of bonds | 15,883.00 |
| Total | 78,816.01 |

All of the above-mentioned securities purchased prior to and after the enactment of the said New York law were kept in a separate safe-deposit box, in the names of decedent and his wife as joint tenants, which box did not contain any other securities.

During his lifetime the decedent filed income tax returns for his daughter Helen and included therein all the income from the alleged gifts, and the taxes shown to be due thereon, if any, were paid out of what decedent believed to be Helen's property.

During his lifetime the decedent also filed gift tax returns for each of the calendar years 1945 to 1958, inclusive. All of the items included in the previously mentioned total of $80,397.25, with the exception of the $467.25 of the U.S. savings bonds, were included in the total gifts shown in those returns.

Subsequent to decedent's death all of the above-mentioned property held in the names of decedent and his wife as joint tenants or in the name of decedent as custodian for Helen was transferred to decedent's

wife as successor custodian for Helen F. Chrysler under article 8–A of the Personal Property Law of New York.

Petitioner contends that on the basis of the facts stipulated by the parties and as restated above, the decedent, on various dates from March 6, 1944, to January 7, 1958, made 21 outright gifts to his daughter Helen in the total amount of $80,397.25; that on and after such dates such properties and the properties resulting from the investment and reinvestment thereof all belonged to Helen as her properties; that at the time the decedent made these investments and reinvestments he was acting in a fiduciary capacity for Helen and not for himself; and that on the date of decedent's death the decedent no longer had any interest in such properties which could be included in his gross estate under any of the above-mentioned sections 2033, 2036, 2038, or 2040 of the 1954 Code.

Petitioner cites three cases, *Silverman* v. *McGinnes*, 259 F. 2d 731 (C.A. 3, 1958), *Estate of John H. Boogher*, 22 T.C. 1167, and *Estate of Michael A. Doyle*, 32 T.C. 1209, for the proposition "that the form of registration in the names of joint tenants is in no way conclusive and that evidence will be received by the Court to demonstrate that decedent either never had or had relinquished any interest in the property as a potential survivor." The cases of *Boogher* and *Doyle* are not good cases for petitioner for both were decided for the Commissioner on the basis of the evidence there introduced. In *Silverman* v. *McGinnes*, the decedent there purchased some bonds and had some of them registered in his name and in the name of one or the other of his minor children as coowners. He *delivered* the bonds to his wife, stating that they were *outright gifts* to her and the children, respectively. He confirmed this gift *in writing by a letter to her.* But he never had the bonds reissued in the names of the respective donees. At his death the Commissioner included the value of the bonds in the decedent's gross estate under section 811(e), I.R.C. 1939, which is substantially the same as section 2040, *supra*, of the 1954 Code. In holding that the Commissioner was in error in so doing, the U.S. Court of Appeals for the Third Circuit, in part, said:

The transaction is equivalent to an express trust declared by the decedent even though trust terms were not used.

* * * [The] decedent, prior to his death, was not equitably entitled to any of the proceeds of these bonds. Had he cashed the bonds, he and his representative after him would have been compelled to hold the proceeds in trust for the donees of his inter-vivos gift. In essence the decedent, prior to his death, had effectively conveyed his right of survivorship to the co-owners of the bonds. The Estate Tax attaches to the economic benefit to be derived from property rather than the technical ramifications of title.[9] The decedent had parted with his economic interest prior to his death, and in the words of the Internal Revenue Code of 1939, "the extent of the interest therein held" by the decedent was nothing. The taxing statute is not applicable. [Footnote omitted.]

In the instant case there was no delivery to the respective donees, constructive or otherwise, such as there was in *Silverman* v. *McGinnes*. Therefore, we do not consider that case as controlling here.

As far as issue 2 is concerned, on the day of decedent's death, the alleged gifts to Helen were held as follows:

"Jack F. Chrysler or Helen F. Chrysler" (U.S. savings bonds) _____ $681.90

"Jack F. Chrysler and Edith B. Chrysler, as joint tenants with right of survivorship and not as tenants in common" (stocks $53,875.00, industrial bonds $3,172.50, and cash $19,705.75) _____ 76,753.25

Total_____ 77,435.15

Clearly, the U.S. savings bonds are includable in the decedent's gross estate under section 2040 as jointly owned property. *Estate of Oliver B. Avery*, 40 T.C. 392 (headnote 3). The *Avery* case distinguished the *Silverman* case and cited as controlling the *Boogher* case. We reach the same result as to the stocks, industrial bonds, and cash in the total amount of $76,753.25. We do not believe the decedent, prior to his death on November 7, 1958, had so completed his contemplated gifts to Helen in such a way as would exclude the properties in question from inclusion in his gross estate under section 2040, *supra*. Certainly, he had not done as he did in the two irrevocable trusts considered under issue 1—divested himself of all economic interest in the properties. We hold for the respondent on issue 2.

Issue 3 is not so clear. We think, however, for the reasons hereinafter given, that it too should be decided in favor of the respondent.

Issue 3 involves the securities that were purchased and transferred by the decedent *after* the enactment of article 8-A of the Personal Property Law of New York[7] consisting of stocks of the value of $62,933.01 and industrial bonds of the value of $15,883 (total $78,816.01) and held in the name of "Jack F. Chrysler as custodian for Helen Forker Chrysler, a minor, under article eight-a of the personal property law of New York." The respondent contends that the value of these securities is includable in the decedent's gross estate under the provisions of sections 2036(a) (fn. 1) and 2038(a)(1) (fn. 5).

Petitioner contends that we must go back to the original 21 deposits and transfers made between March 6, 1944, and January 7, 1958, in the total amount of $80,397.25. Petitioner argues that these deposits and transfers were outright gifts to Helen; that on and after such dates such deposits and transfers and the properties resulting from the

---

[7] This law became a law on Mar. 2, 1956. It was added by 1956 Laws, ch. 35. Later, after decedent's death it was repealed and replaced by "Article 8-A-New York Uniform Gifts to Minors Act" added by 1959 Laws, ch. 233, effective July 1, 1959 (N.Y. Consolidated Laws Ann., book 40, part 2, pp. 599–611 (McKinney)). Cf. *Application of Muller*, 235 N.Y.S. 2d 125.

investment and reinvestment thereof all belonged to Helen as her properties; that at the time decedent made these investments and reinvestments he was acting in a fiduciary capacity for Helen and not for himself; and that on the date of decedent's death, the decedent no longer had any interest in such properties which could be included in his gross estate.

We have held under issue 2, *supra*, that the original 21 deposits and transfers were not completed gifts from decedent to Helen. Therefore, we start from the time of the enactment of article 8–A of the Personal Property Law of New York when decedent took some of the original deposits and transfers and purchased securities having a total value at the date of his death of $78,816.01, and which he held in his name "as custodian" for Helen. As to these securities, can it be said that decedent under section 2036 had "retained for his life" such an "interest" in the securities as would make them includable in his gross estate, or under section 2038 had made a transfer "where the enjoyment thereof was subject at the date of his death to any change through the exercise of a power * * * (without regard to when *or from what source* the decedent acquired such power), to alter, amend, revoke, or terminate" the transfer (emphasis supplied). We think the $78,816.01 is includable in decedent's gross estate under both sections.

At the time decedent purchased the above securities having a total value at the date of his death of $78,816.01 he knew of the provisions of article 8–A of the Personal Property Law of New York for he made himself the custodian under that law. Section 266 of the law provides:

2.(a) The custodian shall hold, manage, invest and reinvest the property held by him as custodian, including any unexpended income therefrom and the proceeds of sale thereof, as hereinafter provided. He shall collect the income therefrom and apply so much or the whole thereof and so much or the whole of the other property held by him as custodian as he may deem advisable for the support, maintenance, education and benefit of the minor. * * *

We agree with the respondent that under this section the decedent had the right as custodian to apply as much of the income as he may deem advisable for the support, maintenance, education, and benefit of the minor and that, therefore, he had made a transfer under which he had in effect retained the right to use the income from the property to discharge his legal obligation to support Helen. We think such a retained right is sufficient to require the property transferred to be included in the decedent's gross estate under section 2036(a), *supra*.

We also think the securities purchased and transferred *after* the enactment of the above-mentioned New York law are includable in decedent's gross estate under section 2038(a)(1), *supra*. In this connection, the respondent, in his brief, makes this argument:

It is respondent's contention in the instant case that there was no restriction as to distribution on the part of the decedent as custodian. During his lifetime he had the right, as well as the power, to pay over income and/or principal to the minor at any time and thus "terminate" the custodial arrangement. The decedent, having adopted the provisions of section 266 of the New York Personal Property Law as a condition of his transfer, and having retained substantially the same powers as a trustee of a trust to pay the income or principal to the minor or to withhold the property from the minor until the minor reaches the age of twenty-one, retained the power to alter, amend, revoke or terminate, and thus the property is taxable under the provisions of section 2038(a)(1). *Lober v. United States*, 346 U.S. 335 (1953), 44 A.F.T.R. 467; *Estate of Holmes v. Commissioner*, 326 U.S. 480 (1946), 34 A.F.T.R. 308. (See, also, Rev. Rul. 57-366, C.B. 1957-2, 618 and Rev. Rul. 59-357, C.B. 1959-2, 212.)

In *Commissioner* v. *Holmes' Estate*, 326 U.S. 480, a donor transferred property to himself as trustee and retained the right as trustee to pay the income and principal to a designated beneficiary or to withhold enjoyment of the property from the beneficiary until the beneficiary attained a certain age. It was held that the value of the transferred property was includable in the donor's estate under section 811(d) of the 1939 Code, which is substantially the same as section 2038(a) of the 1954 Code, as a transfer in respect of which the donor retained a power to alter, amend, revoke, or terminate. Among other things the Supreme Court said:

A donor who keeps so strong a hold over the actual and immediate enjoyment of what he puts beyond his own power to retake has not divested himself of that degree of control which § 811(d)(2) requires in order to avoid the tax.

To the same effect is *Lober* v. *United States*, 346 U.S. 335.

We think the result is the same where a donor transfers property to himself "as custodian" pursuant to the provisions of article 8-A of the Personal Property Law of New York known as the Model Gifts of Securities to Minors Act, and retains substantially the same powers as the donor-trustee in the *Holmes' Estate* and *Lober* cases. By appointing himself as custodian, we think the donor is deemed to have adopted the provisions of the Model Gifts of Securities to Minors Act as the terms of his conveyance.

We do not think the case of *Estate of Willard V. King*, 37 T.C. 973, relied upon by petitioner is to the contrary. In that case the decedent created three trusts for his three *adult* children naming the Chase National Bank of the City of New York as sole trustee. The decedent, however, did retain for his lifetime the right to direct the trustee as to the investment and management of the fund. We held, however, that under this retention "he was not at liberty to administer the trust for his own benefit or to ignore the rights of the beneficiaries." The beneficiaries in the instant case were both minors and, under section 266 of article 8-A of the Personal Property Law of New York, the

decedent retained the right to use the income from the property to discharge his legal obligation to support his minor children. These are facts which we think distinguish the *King* case from the instant case.

What we have said in regard to the alleged inter vivos gifts to Helen applies equally to the alleged gifts to Jack, Jr. Decedent went through the same procedure in making alleged inter vivos gifts to each of his two minor children.

As to issues 2 and 3, we hold for the respondent subject to our "Note" in our preliminary statement.

*Decision will be entered under Rule 50.*