Estate of Stephen L. Richards, Deceased, Lynn S. Richards, Executor v. Commissioner.
Estate of Richards v. Commissioner
Docket No. 1608-63.
United States Tax Court
T.C. Memo 1965-263; 1965 Tax Ct. Memo LEXIS 65; 24 T.C.M. (CCH) 1436; T.C.M. (RIA) 65263; October 4, 1965
Harold H. Hart, Newhouse Bldg., Salt Lake City, Utah, for the petitioner. D. Lee Stewart for the respondent. DAWSON
Memorandum Findings of Fact and Opinion DAWSON, Judge: Respondent determined a deficiency of $31,685.08 in estate tax against the Estate of Stephen L. Richards. The only issue for decision is whether the value of a trust, created by the decedent on January 31, 1942, is includable in his gross estate under the provisions of section 2036(a)(1) of the Internal Revenue Code of 1954. Findings of Fact Some of the facts have been stipulated and are so found. Stephen L. Richards, who was born June 18, 1879, died *66 a resident of Salt Lake City, Utah, on May 19, 1959. He was survived by his wife, Irene, by three sons, Lynn, Philip, and Richard, and by four daughters, Irene, Lois, Alice, and Georgia. The Federal estate tax return for the Estate of Stephen L. Richards was filed with the district director of internal revenue, Salt Lake City, Utah. On January 31, 1942, Stephen L. Richards created a trust naming his three sons and his brother, G. Gill Richards, as trustees. The trust instrument provides, in pertinent part, as follows: SECOND: The Trustees shall collect and hold all income of every name and nature from the trust estate, together with the corpus thereof, in trust for Irene Merrill Richards, my wife, during her lifetime. THIRD: My Trustees shall pay unto my wife Irene Merrill Richards for her maintenance and support the net income from my trust estate at such times as they in their sole discretion shall determine. In the event the net income of this trust shall not be sufficient to support and maintain my wife the said Trustees may in their uncontrolled discretion pay to my wife out of the sale of the corpus of said trust estate any additional sums as may be necessary for her *67 comfort and support. [Emphasis supplied.] FOURTH: The trust for the benefit of my said wife shall persist throughout her lifetime. Upon her death the said Trustees shall hold said trust estate in trust for my seven children Lynn Stephen Richards, Irene Louise Richards Covey, Lois Bathsheba Richards Hinckley, Alice Leila Richards Allen, Georgia Gill Richards Olson, Philip Longstroth Richards and Richard Merrill Richards. * * *
NINTH: (a) This is a trust for maintenance, and I direct that the payments to my said wife and children hereinbefore specified be made by my Trustees according to the foregoing terms and continuing until and including the time of the distribution of the trust estate by the Trustees. At the time the trust was created, Stephen L. Richards transferred to the trustees 3,800 of the 4,999 outstanding shares of the capital stock of Wasatch Land and Improvement Company (hereafter called Wasatch), a closely-held family corporation. Later Richards transferred to the trustees an additional 300 shares of Wasatch stock on March 3, 1945, and 890 shares on April 30, 1949. No other property was ever transferred to the trust. The trust had no gross or net income at *68 any time in any year from its creation until the death of Stephen L. Richards. Wasatch, a Utah corporation organized about 1912, is the owner of the fee title in about 67 acres of land in Salt Lake City which had been developed as a cemetery called Wasatch Lawn Memorial Park. Corporate income is derived from the sale of gravesites and related activities within the cemetery. When Stephen L. Richards created the trust he was president and general manager of Wasatch. He continued to serve the corporation in these capacities until his death. The directors of Wasatch as of January 30, 1942, were as follows Lynn S. Richards Richard M. Richards Philip L. Richards Ralph Harvard Olson (son-in-law of Stephen L. Richards) Jay Knight Allen (son-in-law of Stephen L. Richards) Stephen G. Covey (son-in-law of Stephen L. Richards) Frederick R. Hinckley (son-in-law of Stephen L. Richards) Orval W. Adams (banker) The directors of Wasatch as of May 19, 1959, were as follows: Stephen L. Richards Irene M. Richards (wife of Stephen L. Richards) Lynn S. Richards Richard M. Richards Philip M. Richards Louise R. Covey (daughter of Stephen L. Richards) Lois R. Hinckley *69 (daughter of Stephen L. Richards) Alice R. Allen (daughter of Stephen L. Richards) Georgia R. Olson (daughter of Stephen L. Richards) The assets and liabilities of Wasatch on December 31, 1958, were carried on its books as follows: ASSETS: Cash
$ 18,584.91
Stocks
13,156.96
Receivables (Accounts, mortgages,
notes and contracts)
37,941.08
Real estate
46,592.23
Improvements - net
8,359.54
Buildings - less accumulated depre-
ciation
11,506.42
Furniture - less accumulated de-
preciation
2,398.93
Equipment - less accumulated de-
preciation
13,411.36
Miscellaneous assets
3,543.98
Total assets
$155,495.41
LIABILITIES and EQUITY: Accounts payable
$ 3,390.37
Reserves (taxes, unrealized profit,
open graves, etc.)
15,209.93
Capital stock
50,000.00
Retained earnings
86,895.11
$155,495.41
Wasatch has never paid a dividend in any year from January 31, 1942, to May 19, 1959. Its business needs are such that it requires large sums of money for investment in capital assets and operating expenses. The amount spent for capital improvements between 1942 and 1959 exceeded $44,000. In addition, $117,000 was spent for equipment and maintenance *70 of the cemetery. During such period Wasatch invested in real estate contiguous to its existing cemetery facilities and also made improvements in roads, lawns, shrubs, surveying, pipelines, water systems, and buildings. In 1958, Wasatch had 30 acres of undeveloped land. The corporation intended to incorporate this land into the cemetery proper. Wasatch also planned to construct an expensive north entrance to the existing cemetery facilities and to build garden crypts extending along the east border of the property. At the time the trust was created, Stephen L. Richards lived with his wife in a home which he owned at 254 Seventh Avenue, Salt Lake City, Utah. In November 1950, he and his wife moved to an apartment at 105 East South Temple in Salt Lake City where they resided until his death. Stephen L. Richards' income from 1942 until his death in 1959 was more than ample to support his wife and he did support her during such period. In these years he received salaries as an officer or director of several companies. Examples of his total income from all sources are as follows: 1942
$19,690.85
1947
22,929.27
1952
40,519.34
1957
49,767.44
Richards' wife, Irene, *71 had no properties or income of her own during the period from January 31, 1942, to May 19, 1959. Stephen L. Richards' total gross estate was valued at the date of his death for estate tax purposes at $427,024.41. In addition, the assets in the trust of January 31, 1942, were valued as of the date of his death at $229,540. In its estate tax return no part of the assets of the trust were included by petitioner in the gross estate. Opinion Respondent contends that the value of the assets in the trust created by Stephen L. Richards on January 31, 1942, is includable in his gross estate under section 2036(a)(1) of the Internal Revenue Code of 1954, [1] because, under Utah law, [2] he was under a legal obligation to support his wife. [3] In support of this position respondent relies on the following cases: Commissioner v. Dwight's Estate, 205 F. 2d 298 (C.A. 2, 1953); Helvering v. Mercantile Commerce Bank and Trust Company, 111 F. 2d 224 (C.A. 8, 1940); First National Bank of Montgomery v. United States, 211 F. Supp. 403 (M.D. Ala. 1962); and Estate of William H. Lee, 33 T.C. 1064 (1960). *72 Petitioner does not dispute the general principles of law set out in the cases cited by respondent, but argues that the facts of this case bring it within an exception carved out by our decisions in Estate of Jack F. Chrysler, 44 T.C. 55 (1965), and Estate of Payson Stone Douglass, 2 T.C. 487 (1943), affirmed sub nom Commissioner v. Douglass' Estate, 143 F. 2d 961 (C.A. 3, 1944). See also Lettice v. United States, 237 F. Supp. 123 (S.D. Calif. 1964). In each of these cases trusts created for the maintenance and support of legal dependents were not includable in the settlors' estates because the trustees were given discretionary powers of distribution. Respondent argues that the Daoglass and Chrysler cases are distinguishable. In his brief he states: In Commissioner v. Douglass' Estate, supra, Lettice v. United States, supra, and Estate of Jack F. Chrysler, supra, the trustees had sole discretion as to whether any income of the trusts was to be applied for the maintenance and support of the beneficiaries. In the case at bar, the dispository paragraph of the trust instrument required that *73 the trustees pay to the decedent's wife for her maintenance and support the net income from the trust estate. The trustees had discretionary power only as an invasion of the corpus in the event the net income of the trust was insufficient to support and maintain the wife and as to the time to make payment, i.e., weekly, monthly, or quarterly. We are thus faced with a very narrow question of interpretation: Does the language of the trust instrument operate to give the trustees discretion over the payment of trust income to Richards' wife so as to bring this case within Douglass and Chrysler? We think not. In our opinion Stephen L. Richards retained an enforceable right to have the trust income used to discharge his legal obligation to support his wife. Although we realize that the trust never had any income, the trust corpus was never used to support Irene Richards, and Stephen Richards did support his wife from 1942 until his death in 1959, it is our view that the trust agreement is the best index of the settlor's intent. The requirement as to the payment of trust income was not permissive or discretionary, but absolute. In plain and unequivocal language, the third dispository *74 paragraph provides that the "Trustees shall pay unto my wife * * * for her maintenance and support" the net income from the trust. And, if the income was not sufficient, then the trustees could in their discretion invade the corpus for that purpose. Moreover, the ninth paragraph of the trust instrument expressly states that "This is a trust for maintenance." As we read the trust instrument, the only discretion given to the trustees was as to the times payments were to be made. There was no discretion as to the purpose for which payments were or were not to be made. Under these particular circumstances we think a court would have compelled the trustees to provide for the wife's maintenance and support out of trust income. Accordingly, we hold that the value of the trust is includable in the gross estate of the decedent. Decision will be entered for the respondent. Footnotes
1. SEC. 2036. TRANSFERS WITH RETAINED LIFE ESTATE. (a) General Rule. - The value of the gross estate shall include the value of all property (except real property situated outside of the United States) to the extent of any interest therein of which the decedent has at any time made a transfer (except in case of a bona fide sale for an adequate and full consideration in money or money's worth), by trust or otherwise, under which he has retained for his life or for any period not ascertainable without reference to his death or for any period which does not in fact end before his death - (1) the possession or enjoyment of, or the right to the income from, the property, or ↩
2. Section 76-15-1, Utah Code: Any person who, without just cause, deserts or wilfully neglects or refuses to provide for the support and maintenance of his wife in destitute or necessitous circumstances * * * is guilty of a felony, and shall be punished by imprisonment in the state prison at hard labor for a period of not to exceed five years. ↩
3. Section 20.2036-1(b)(2), Income Tax Regs.: The "use, possession, right to the income, or other enjoyment of the transferred property" is considered as having been retained by or reserved to the decedent to the extent that the use, possession, right to the income, or other enjoyment is to be applied toward the discharge of a legal obligation of the decedent, or otherwise for his pecuniary benefit. The term "legal obligation" includes a legal obligation to support a dependent during the decedent's lifetime.↩